UNITED STATES of America,
Plaintiff–Appellee,

v.

Nyguyen A. WATTS, Defendant–
Appellant.

No. 95–3654.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1996.

Decided Sept. 11, 1996.

Bruce E. Reppert (argued), Office of the U.S. Attorney, Criminal Division, Fairview Heights, IL, for plaintiff–appellee.

Paul M. Storment, Jr. (argued), Belleville, IL, for defendant–appellant.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Nyguyen A. Watts of possession with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, Watts challenges the sufficiency of the evidence against him, as well as the admission of testimony of Rudy McIntosh, a surveillance

officer who saw Watts in possession of the drugs. We affirm.

## Background

The case against Watts began on February 6, 1995, when the East St. Louis Police Department "Delta Team" arrested Ricky Walls for possession of crack cocaine. The following day, Walls returned to the police station and told Detective Tony Mino, the officer who had arrested him, that he could put the police in touch with someone who could sell him drugs. With Mino in the room, Walls called Watts' pager from the police station. Watts returned the call, and Walls asked him if he could buy "a couple" at the "regular location." Watts initially demurred, but enticed by Walls' offer to share some marijuana with him, agreed to meet Walls at a gas station in East St. Louis.

East St. Louis Police Officers searched Walls and his van before giving him $402.00 in "buy money" to purchase the crack cocaine. Walls also was under constant surveillance as he proceeded to the designated meeting place. When Watts drove up, Walls signalled to him to follow his van down a nearby street. Watts pulled over near Walls' van, got out of his car, and entered the van from the passenger side. At this point, the stories differ. Watts, who testified on his own behalf, claims that he immediately saw Walls with money and crack cocaine and therefore tried to exit the van to avoid being set up. Officer McIntosh, an undercover member of the Metropolitan Enforcement Group of Southwestern Illinois and the first officer to arrive at the scene, saw things differently. Upon arriving at the van, Officer McIntosh saw Watts holding a bag and then saw him drop it on the front seat of Walls' van. When the police arrested Watts outside the van, they recovered a bag of crack cocaine on the front seat.

A grand jury indicted Watts on a single count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). In the course of preparing for trial, the defense obtained a copy of Detective Mino's arrest report, which identified other members of the surveillance team, including Detective James Mister and Officer Corey Harris. The arrest report stated that none of the officers at the scene saw Watts with the drugs or money. However, on Friday, June 16, with Watts' trial set to begin the following Monday, the government disclosed that Officer McIntosh had seen Watts "holding the dope."

At trial, Mino, Mister, and Harris testified consistently with Mino's arrest report—i.e. that they did not see Watts handle the drugs or the money. With respect to Officer McIntosh's testimony, however, the defense filed a motion in limine to preclude the government from presenting "any evidence of any officer who allegedly saw drugs in the hands of the defendant." As grounds for the motion, the defense cited the government's failure to disclose the information until three days before trial. The district court denied the motion, and Officer McIntosh testified that he saw Watts drop the drugs on the front seat of Walls' van. Walls, the only other person who might have seen Watts possess the drugs, never testified. The jury returned a guilty verdict. Watts appeals the sufficiency of the evidence that supports his conviction, as well as the district court's denial of his motion in limine.

## Analysis

### A. *Sufficiency of the Evidence*

■ To convict Watts, the government had to prove beyond a reasonable doubt that he "knowingly or intentionally possess[ed] with intent to distribute a controlled substance." 21 U.S.C. § 841(a)(1). Once convicted, however, Watts bears a heavy burden in challenging the sufficiency of the evidence. *See United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). We consider the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *United States v. Strang*, 80 F.3d 1214, 1219 (7th Cir.1996).

■ In this case, the evidence more than amply supports Watts' conviction. Watts' theory is that Walls possessed the crack cocaine and lured him to the van so that he could set him up. However, the police

searched Walls and the van prior to his leaving the police station, and the surveillance team kept Walls under constant observation throughout the transaction. In response to this evidence, Watts presented expert testimony that a complete search of Walls' van would have taken much longer than the five to ten minutes that the police allotted. However, the same expert also conceded that it would take only a relatively short time to search the area of the van accessible from the driver's seat. Watts' view of the evidence also fails to take into account the testimony of Officer McIntosh, who actually *saw* Watts in possession of the crack cocaine. Drawing all inferences in favor of the government, it does not appear that Watts was wrongly convicted. To the contrary, the evidence suggests that the police caught Watts red-handed.

■ The government's failure to call Walls as a witness also does not save Watts. The defense asks us to infer from Walls' absence that his testimony would have been adverse to the prosecution. We make no such inference. *See United States v. Sblendorio,* 830 F.2d 1382, 1394 (7th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). The government may have had strategic reasons for not calling Walls, or it simply may have decided that it did not need his testimony. Regardless, the evidence of the search of the van before Walls left the police station, especially in combination with the testimony from Officer McIntosh, was more than enough to connect Watts to the controlled substance.

**B.** *Motion in Limine*

■ We turn next to Watts' claim that the district court erred in denying his motion in limine, and we review the denial of the motion for abuse of discretion. *See Soller v. Moore,* 84 F.3d 964, 967 (7th Cir.1996). Watts argues that the district court should have excluded Officer McIntosh's testimony because the government informed Watts of it only three days before trial. This plea for earlier disclosure fails for one very simple reason: no rule of law requires it. Watts does not complain that the U.S. Attorney's office failed to provide the information it had

about Officer McIntosh's prospective testimony, he merely contends that the government should have provided the information sooner. However, Fed.R.Crim.P. 16, does not require the government to provide a witness list, nor does it require the government to reduce all witness statements to writing in advance of the witness' testimony. *See Weatherford v. Bursey,* 429 U.S. 545, 560, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977).

Defense counsel insists that the government's eleventh-hour disclosure caught him by surprise in light of Detective Mino's consistent statements that no officer had seen Watts hold any drugs. However, Officer McIntosh's name appears in some of the police reports identifying him as a member of the surveillance team. Moreover, McIntosh's testimony that he left the scene shortly after Watts' arrest so as not to blow his cover does not necessarily conflict with Detective Mino's testimony that, to his knowledge, no officer had seen Watts with the drugs. There is no indication in the record that Watts requested a continuance after hearing about McIntosh's testimony on Friday afternoon, nor is there any allegation of a *Brady* or *Giglio* violation by the prosecution. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). In short, no basis existed for excluding Officer McIntosh's testimony.

### Conclusion

For the foregoing reasons, Watts' conviction is

AFFIRMED.