**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jesse T. GRIFFIN, Defendant–Appellant.**

**Nos. 98–4016, 98–4302.**

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1999.

Decided Oct. 14, 1999.

Rehearing Denied Nov. 19, 1999.

Andrew B. Baker, Jr. (argued), Joseph Alexis Cooley, Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Joseph Banasiak (argued), Bamber, Bosch & Banasiak, Hammond, IN, for Defendant–Appellant.

Before RIPPLE, MANION and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Jesse T. Griffin was indicted on one count of possession with intent to distribute more than 5 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). His first trial ended in a hung jury. Six weeks later, a second jury convicted him of the charge, and the district court sentenced him to a term of imprisonment of 135 months. On appeal, Mr. Griffin raises eleven issues. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

The relevant events took place on November 12, 1997, in the Delaney Housing Projects in Gary, Indiana. Gary police detectives Azcona, Campbell and Trevino, accompanied by Special Agent Waldron of the Department of Housing and Urban Development ("HUD"), were working together on a narcotics task force called Operation Safe Home, funded by HUD to combat violent crime and drug trafficking in public housing projects. Around 1:00 p.m. that day, they were driving in an unmarked police van on a drug task patrol in the Delaney Projects. Detective Campbell, using binoculars, saw Mr. Griffin approach a parked car, walk up to the driver's side, reach into his right jacket pocket, pull out a plastic bag, and make a hand-to-hand transaction with the driver. Detective Azcona also saw the transaction.

As Mr. Griffin walked away from the car, Detective Trevino turned the van toward him, and Detective Campbell got out. The detective identified himself as a police officer and told Mr. Griffin to stop. Mr. Griffin began running. He fled through a gangway between two buildings in the Projects, over a little hill behind the buildings and onto a parking lot, with Detective Campbell in pursuit. At that point, Mr. Griffin reached into his pocket, pulled out a bag and threw it on the ground. Detective Campbell retrieved the bag as he was running after Mr. Griffin. The officer testified at trial that he observed that the bag contained a number of little pink and green baggies in it.

In the meantime, the officers in the van, going to the aid of their colleague who was pursuing Mr. Griffin, had driven around to block Mr. Griffin's path instead of following the car that Mr. Griffin had approached. While Detective Campbell ran through the parking lot behind Mr. Griffin, Detective Trevino cut him off from the front. Mr. Griffin surrendered. As Detectives Azcona and Trevino arrested and handcuffed him, Detective Campbell arrived with the bag Mr. Griffin had thrown down. A cellular telephone and $97 in cash were found when Mr. Griffin was searched.

Mr. Griffin was charged with one count of possession with intent to distribute more than 5 grams of cocaine base. At trial, two experts from the Indiana State Police Laboratory testified about the bag Mr. Griffin had thrown and the detective had retrieved. The fingerprint examiner who had analyzed the outer bag, which had been twisted and tied, testified that he had developed no latent prints. He testified that plastic bags are poor receptors for latent fingerprints and that, in his experience in examining several hundred plastic bags, identifiable prints were recovered on only twenty-five percent of the bags. The state police chemist who analyzed the 68 small green and pink ziplock baggies inside the bag determined that the rock-like off-white substance found in the green baggies contained 5.08 grams of cocaine base and that the pink baggies contained 2.18 grams of cocaine base.

Also testifying at Mr. Griffin's trial were two street level crack cocaine dealers, Marlon Phillips and Shannon Hemphill. Both were involved in a narcotics distribution conspiracy run by a Michael Mason and both had dealt drugs with Mr. Griffin in various areas, including the Delaney Projects. They testified in cooperation with the Government as required by their plea agreements. Marlon Phillips testified that, from June 1996 to November 1996, he was part of Mason's cocaine distribution organization. His duties included cooking kilograms of cocaine into crack cocaine, selling crack and running drugs to dealers in the Delaney Projects; however, he did not deliver to Mr. Griffin at that time. Phillips testified that he ended his association with Mason in November 1996 and, in February 1997, returned to dealing on the streets of the Delaney Projects. At that time he sold crack with Mr. Griffin and others, selling nickel and dime bags in tiny, colored plastic baggies. When a car stopped in the area, several dealers would run up to the car and display their baggies to the driver. On occasion, Phillips testified, he and Mr. Griffin ran up to the same car. Phillips also told the jury that he would carry 30 to 40 baggies at a time. Because of police activity, in May 1997, Phillips, Mr. Griffin and other sellers moved to another location. Phillips testified that he sold crack in that location until his arrest in July 1997 and that Mr. Griffin also was out there selling every day.

Shannon Hemphill testified that he grew up in the Delaney Projects, where he knew Mr. Griffin. When he started with the Mason organization, he was a drug dealer, selling dime bags of crack on the street for two years. Hemphill testified that he carried 10 to 20 dime bags at a time. Then he began running drugs. He stated that he delivered crack cocaine to Mr. Griffin and to other drug dealers in the Delaney

Projects in the summer of 1996. Hemphill testified that he delivered an ounce or 2 of crack once or twice a month to Mr. Griffin until September 1996, when Hemphill went to jail. After his release from jail on November 6, 1996, Hemphill testified, he no longer delivered drugs in the Delaney Projects. However, he stated, he saw Mr. Griffin selling crack in the Projects at that time.

Both witnesses testified that they saw Mr. Griffin selling crack cocaine on previous occasions in the general vicinity of the arrest and, in particular, that he sold crack to people in vehicles. Both crack dealers also testified that the drugs seized from Mr. Griffin looked like crack cocaine. Hemphill described crack as a white or off-white rock-hard substance. He testified that the drugs seized from Mr. Griffin appeared to be crack cocaine packaged like the crack he had dealt. Hemphill called the small, colored bags "seals," and stated that the most seals he had sold to one customer was five dime bags.

In addition to these witnesses, at the second trial the Government called a new witness, an eleven-year veteran of the Drug Enforcement Agency ("DEA"), to testify as an expert witness on drug trafficking. After the court overruled Mr. Griffin's objection to the new witness, DEA Agent Mark Keller testified that a street level dealer sells small amounts of crack cocaine intended for personal use. He stated that, in his opinion, the cocaine seized from Mr. Griffin was meant for distribution. According to Agent Keller, a user would typically have only 1 or 2 such packets of crack cocaine, and a user who could purchase gram quantities of crack would buy the crack in bulk rather than individually packaged, because it was cheaper.

At the second trial, Hemphill and Phillips were presented as Government witnesses after Agent Keller testified. At the close of the Government's case, Mr. Griffin moved for judgment of acquittal. The court denied the motion. Mr. Griffin then rested without presenting any evidence. The jury found Mr. Griffin guilty as charged in the superseding indictment.

## B. Order of the District Court

After trial, Mr. Griffin filed motions for a new trial and for judgment of acquittal. The district court denied both motions. The court rejected Mr. Griffin's contention that, with no fingerprint evidence found on the bag, the Government did not prove he actually possessed the drugs involved in the offense. After reviewing Officer Campbell's testimony that he retrieved the bag that he saw Mr. Griffin throw down, the court held that the jury could have believed the testimony of the officer.

The court also upheld its admission of the testimony of cooperating witnesses Hemphill and Phillips at trial. According to the court, the evidence had been allowed after a hearing on the matter; in addition, the court gave a limiting instruction regarding this testimony during the trial and a jury instruction at the end of trial. The court noted the confusion about whether Phillips sold drugs as a member of the Mason gang until 1996 or 1997 and whether he witnessed Mr. Griffin selling narcotics in 1996 or 1997. However, the court concluded, even if Phillips witnessed the defendant selling narcotics in 1996 rather than 1997, an action from 1½ years before the charged offense fell within a reasonable time period for Rule 404(b) evidence. Thus, the court held, the testimony of Hemphill and Phillips was admissible as evidence of Griffin's specific intent to possess crack. The court also determined that their testimony involved miscommunication, not perjury, and was not incredible. It upheld the verdict and denied the motions.

## II

## DISCUSSION

### A. Trial Issues

### 1. Motions for Judgment of Acquittal

Both at the close of the Government's case and as a post-trial motion, Mr. Griffin

moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 on the ground that the evidence presented against him was insufficient to sustain a conviction for the charged offense.[1] The trial court denied the motions. We begin with this argument because, if Mr. Griffin is correct, we need not reach the other issues.

■ We review de novo a district court's denial of a Rule 29 motion. Viewing the entire record and accompanying inferences in the light most favorable to the Government, we affirm the district court's ruling as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Hach*, 162 F.3d 937, 942 (7th Cir.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 1586, 143 L.Ed.2d 680 (1999). In this review, we do not reweigh evidence or reassess the credibility of witnesses; these are jury determinations to which we defer. *Id.*

### (a)

■ Mr. Griffin has presented two reasons that he should be acquitted of the charge against him. First, he submits that the Government did not establish, beyond a reasonable doubt, all the elements of the offense—specifically, that he possessed co-

caine base with the intent to distribute. According to Mr. Griffin, the Government was unable to provide evidence that he was involved in a drug transaction when he was arrested; he claims that the police officers were too far away to hear Mr. Griffin's conversation with the car driver or to see whether anything was exchanged.

■ Mr. Griffin's argument that the Government did not prove he sold crack cocaine to the car driver misses the point. Mr. Griffin was charged with possession, not distribution, of narcotics.[2] To convict Mr. Griffin of violating 21 U.S.C. § 841(a)(1), the Government was required to prove beyond a reasonable doubt that he (1) knowingly or intentionally possessed cocaine base, (2) possessed the cocaine base with the intent to distribute it, and (3) knew the cocaine base was a controlled substance. *See United States v. Hunter*, 145 F.3d 946, 950 (7th Cir.), *cert. denied*, — U.S. ——, 119 S.Ct. 266, 142 L.Ed.2d 219 (1998).

In this case, Detective Campbell testified that Mr. Griffin had possessed a bag containing 68 little baggies, that he threw it down as he ran away from Detective Campbell, and that the detective picked up the bag that he saw Mr. Griffin throw down. The two crack cocaine street dealers identified the material in the little bag-

1. Subsections (a) and (c) of Federal Rule of Criminal Procedure 29, Motion for Judgment of Acquittal, are pertinent to this case:

 (a) Motion Before Submission to Jury. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

 . . . . .

 (c) Motion After Discharge of Jury. If the jury returns a verdict of guilty or is dis-

charged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

2. The superseding indictment brought against Mr. Griffin charges that he "did knowingly and intentionally possess with the intent to distribute in excess of 5 grams of" cocaine base. R.39.

gies as a drug that looked just like the crack cocaine they sold on the street.[3] The Indiana State Police chemist established that Mr. Griffin's baggies contained over 7 grams of cocaine base. In our view, a jury reasonably could have found that Mr. Griffin knowingly possessed cocaine base, knowing it to be a controlled substance.

To demonstrate that Mr. Griffin possessed crack cocaine with the intent to distribute it, the Government proffered the 68 small baggies inside the plastic bag that Mr. Griffin had carried, and the Government's expert witness, DEA Agent Keller, testified that the fact that Mr. Griffin carried so many small baggies, each with a rock of cocaine, was clear evidence of Mr. Griffin's intent to distribute that crack cocaine. Agent Keller pointed out that a user might possess 1 or 2 packets, even up to 5 dime bags, but only a street dealer, a seller, would have 68 baggies. Dealers Phillips and Hemphill confirmed that testimony. We are confident that a jury reasonably could have found that Mr. Griffin's possession of so many small individual baggies of crack cocaine was consistent with an intent to distribute the packages and, in conjunction with the other evidence presented at trial, was sufficient evidence for his conviction for possession with intent to distribute cocaine base. Moreover, Mr. Griffin's original possession of the thrown-down bag, along with the $97 and a cellular telephone he possessed when apprehended, constitute sufficient evidence for his conviction for possession with intent to distribute cocaine base.

**(b)**

Mr. Griffin's second claim is that the testimony of the Government's police officer witnesses was incredible as a matter of law. He asserts that the following testimony was unbelievable on its face: (1) The police officers in the van never stopped or followed the car that Mr. Griffin allegedly approached in order to substantiate their suspicion that a drug transaction had taken place; (2) none of the police officers got the license plate number of that vehicle; (3) the police officers never called for backup; (4) the testimony of the officers·was inconsistent as to the color of the car and the direction it was facing; and (5) Officer Campbell testified at one point that he found the bag on the ground and another time that it was next to a woodpile. In light ·of the lack of a valid explanation for the officers' actions and their disagreements about evidentiary details, Mr. Griffin submits, there is a reasonable doubt as to the credibility of their testimony.

As we stated above, questions concerning the credibility of witnesses are reserved for a jury to decide, "and the jury's assessments will not be second-guessed by an appellate panel." *United States v. Fiore,* 178 F.3d 917, 924 (7th Cir.1999) (citing *United States v. Alcantar,* 83 F.3d 185, 189 (7th Cir.1996)). "However, '[w]e will overturn a conviction based on a credibility determination ... when a witness's testimony was incredible as a matter of law.'" *Id.* (quoting *United States v. Saulter,* 60 F.3d 270, 275 (7th Cir.1995)). To make the necessary showing that certain evidence is "incredible as a matter of law" or "unbelievable on its face," Mr. Griffin must demonstrate that "it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all." *Alcantar,* 83 F.3d at 189; *see also United States v. Jackson,* 177 F.3d 628, 630–31 (7th Cir.1999) (rejecting defendant's argument that witness was too intoxicated to be capable of giving credible testimony).

The examples Mr. Griffin offers do not fall into either category. Mr. Griffin does

---

**3.** As the Sentencing Guidelines state, "'[c]rack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rock-like form." U.S.S.G. § 2D1.1(c) n.(D).

not claim that the officers' testimony was unbelievable because they physically could not have seen the transaction or because it was physically impossible for the events to have occurred. Similarly, the witnesses' disagreements about such facts as the color or direction of the car are routine conflicts in testimony, inconsistencies well within the province of the jury to sort out. We hold that the jury's credibility determinations will not be disturbed on appeal. We conclude, as well, that the Government presented sufficient evidence from which a rational jury could have found Mr. Griffin guilty beyond a reasonable doubt and that the district court appropriately denied Mr. Griffin's motion for judgment of acquittal pursuant to Rule 29.

### 2. Post–Trial Motion for New Trial

 Mr. Griffin challenges the trial court's refusal to grant him a new trial.[4] We review that ruling for an abuse of the district court's discretion. *See United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1844, 140 L.Ed.2d 1094 (1998). Mr. Griffin again submits that the evidence offered at trial was insufficient to prove his guilt of the charged offense beyond a reasonable doubt. In particular, he claims that he was convicted on the basis of the perjured testimony of the Government's witnesses, drug dealers Hemphill and Phillips. When a defendant seeks a new trial on the ground that the Government used perjured testimony, he "must establish (1) that the prosecution indeed presented perjured testimony, (2) that the prosecution knew or should have known of the perjury, and (3) that there is some likelihood that the false testimony impacted the jury's verdict." *Id.* We have emphasized that inconsistencies in a Government witness' testimony "do not establish the government's knowing use of false testimony" and that "the alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence." *United States v. Magana*, 118 F.3d 1173, 1191 (7th Cir.1997), *cert. denied*, 522 U.S. 1139, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998).

To demonstrate the falsity of the witnesses' statements, Mr. Griffin compares the testimony that each drug dealer gave in each trial. He points out that, in the first trial, Phillips testified that he was working for Mason in December 1996; in the second trial, he testified that he quit working for Mason in November 1996. In addition, when testifying that he sold crack cocaine in the Delaney Projects, Phillips identified Fillmore Avenue as the location in the first trial and 23rd and Polk in the second trial. Finally, there was confusion in the second trial concerning whether Phillips was selling crack in the Projects between February and May of 1996 or of 1997. According to Mr. Griffin, such conflicting testimony demonstrates a pattern of lies and contradictions.

Mr. Griffin also points out two examples of Hemphill's allegedly perjurious testimony. At the first trial, Hemphill admitted lying to the police in the past; in the second trial, he admitted that he had used a false name when trying to get out of jail. According to Mr. Griffin, the prosecution knew or should have known of the witnesses' perjured testimony and of their propensity to lie. He submits that their false testimony was bound to have had an effect on the judgment of the jury.

We do not agree with Mr. Griffin's assessment that the testimony of Phillips and Hemphill was obviously perjured or knowingly false and that the prosecution knew or should have known that it was perjurious.[5] Our review of the record leads us to

---

4. Federal Rule of Criminal Procedure 33 states in relevant part: "On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require...."

5. In *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court defined perjury as it is used in the perjury statute, 18 U.S.C. § 1621(1), and generally used elsewhere. It

conclude that the district court was entitled to conclude that the discrepancies Mr. Griffin pointed out were mere inconsistencies in testimony that " 'fall short of establishing perjury and most certainly do not establish that the Government knowingly utilized perjured testimony.' " *Thompson,* 117 F.3d at 1035 (quoting *United States v. Payne,* 102 F.3d 289, 292 (7th Cir.1996)). Hemphill's admissions that he had lied in the past and that he had used a false name were matters for the jury to evaluate. So, too, Phillips' lack of precision about which month he left the Mason organization or on which street he sold crack at a particular time period, when viewed in context, reasonably can be characterized as the result of mistake or faulty memory, not willfully false testimony.

The confusion about when Phillips sold crack in the Delaney Projects certainly concerned a material matter because it involved the period when Phillips saw Mr. Griffin selling narcotics. However, it was the prosecutor, not Phillips, who confused the years 1996 and 1997 when addressing questions to Phillips. Phillips himself stated that he ended his involvement with Mason in November 1996 but became involved with drugs again in February 1997, selling in three locations in the Delaney Projects, along with Mr. Griffin, until July 1997, when he was arrested. In fact, the Government called Phillips to testify at the sentencing hearing simply to clarify that he was selling in the Projects with Griffin in 1997, not 1996. These inconsistencies were not necessarily perjurious; the district court was not required to conclude that Phillips knowingly testified falsely about the times he witnessed Mr. Griffin selling drugs. *See United States v. Tingle,* 183 F.3d 719, 728–29 (7th Cir.1999) (holding that a witness' testimony about when he obtained cocaine from defendant was ambiguous rather than perjurious); *see also Magana,* 118 F.3d at 1191; *United*

*States v. Guadagno,* 970 F.2d 214, 220 (7th Cir.1992).

We note that Mr. Griffin had a chance to explore the inconsistencies and false statements during cross-examination and on re-cross-examination. He also argued to the jury that Phillips was an admitted liar. "When a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it, we have no basis to interfere...." *United States v. Alcantar,* 83 F.3d 185, 189 (7th Cir. 1996). We conclude that the district court did not abuse its discretion by denying Mr. Griffin's motion for a new trial.

### 3. Admission of Testimony of Hemphill and Phillips

Mr. Griffin challenges the district court's decision to admit the testimony of the two street dealers who testified that they had seen Mr. Griffin selling crack cocaine on previous occasions, in the general vicinity of the arrest, and that the drugs seized from Mr. Griffin appeared to be crack cocaine. He raises three claims. First, he contends that their testimony should not have been admitted to introduce evidence of other acts or crimes. Second, he asserts that their testimony was irrelevant and unduly prejudicial. Third, he claims the court improperly treated the witnesses as quasi-experts. We shall examine each argument to determine whether the district court abused its discretion in admitting their testimony. *See United States v. Allison,* 120 F.3d 71, 74 (7th Cir.) ("Under this deferential standard, we ask whether the district court made a decision that was within the range of options from which we might expect a reasonable trial jurist to choose under the circumstances."), *cert. denied,* 522 U.S. 987, 118 S.Ct. 455, 139 L.Ed.2d 389 (1997).

stated that a witness commits perjury if, when testifying under oath or affirmation, he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."

**(a)**

Rule 404(b) of the Federal Rules of Evidence generally prohibits evidence of other crimes or acts such as other drug transactions; however, it allows the admission of such "other acts evidence" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R.Evid. 404(b). Under our court's four-part test, such evidence is properly admitted under Rule 404(b) if the trial court determines that the Government has shown that:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Long,* 86 F.3d 81, 83 (7th Cir.1996). The district court, after a hearing on the matter, allowed Phillips' and Hemphill's testimony to be admitted under Rule 404(b) as evidence of Mr. Griffin's intent. It gave a limiting instruction regarding the testimony during the trial and in the jury instructions.

In cursory fashion, Mr. Griffin challenges the court's findings at each step of the test. With respect to the first prong, Mr. Griffin concedes that the Government's stated purpose in introducing the street dealers' testimony was to show his intent to commit the charged crime. However, he claims that the Government used their testimony to demonstrate more than intent. With respect to the other prongs, he submits that the other acts to which Phillips and Hemphill testified were not similar to the offense of possession with intent to distribute, that they both are liars whose statements must be viewed with scrutiny, and that their suggestion

that Mr. Griffin was a member of the Mason organization was prejudicial and irrelevant. Finally, Mr. Griffin insists that the prejudicial effect of the other acts evidence outweighed its probative value.

We review the district court's decision to admit Rule 404(b) evidence for an abuse of its discretion. *See United States v. Asher,* 178 F.3d 486, 491 (7th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 359, —— L.Ed.2d —— (1999); *Allison,* 120 F.3d at 74 (setting forth approach for appellate review of district court's application of Rule 404(b)). The street dealers' testimony was offered to demonstrate Mr. Griffin's past dealings in crack cocaine in order to establish his intent to distribute the drugs he possessed when he was arrested. Proof of intent is a proper purpose under the first prong of the Rule 404(b) test. *See United States v. Ruiz,* 178 F.3d 877, 880 (7th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 229, —— L.Ed.2d —— (1999); *see also United States v. Coleman,* 179 F.3d 1056, 1061 (7th Cir.1999) (holding there was no abuse of discretion in district court's admission of earlier drug transactions to show his intent to participate in a conspiracy to distribute cocaine), *cert. denied,* —— U.S. ——, 120 S.Ct. 386, —— L.Ed.2d —— (1999) & —— U.S. ——, 120 S.Ct. 387, —— L.Ed.2d —— (1999). Furthermore, because Mr. Griffin was charged with a specific intent crime, evidence of his past activities with crack cocaine was probative of an essential element of the offense. *See Allison,* 120 F.3d at 74–75; *United States v. Hernandez,* 84 F.3d 931, 935 (7th Cir.1996). Thus, the first prong is met.

When considering the second prong, the district court found that the testimony of Phillips and Hemphill was not "so dissimilar or so removed in time as to be irrelevant." R.121 at 5. The court noted the confusion about the dates in Phillips' testimony at the second trial and concluded that, "even if Phillips witnessed Defendant selling narcotics in 1996 rather than 1997, an action from a year and a half before the

charged offense is within a reasonable time period for Rule 404(b) evidence." *Id.* at 4 n. 1. On appeal, Mr. Griffin wisely has not challenged the temporal proximity of the past acts (his selling crack in the Projects in the summer of 1996 and/or 1997) to the matter in issue. *See Ruiz,* 178 F.3d at 880 (reviewing case law and concluding that 2 years is not an inherently unacceptable gap of time); *Allison,* 120 F.3d at 74–75 (holding that 5–year span is acceptable gap). However, he claims that the prior and present activity were dissimilar.

In our view, the district court did not abuse its discretion in concluding that there was sufficient similarity between the prior acts and the conduct of conviction. According to the record, Hemphill testified that he delivered an ounce or 2 of crack to Griffin once or twice a month until Hemphill was arrested, and Phillips stated that he himself regularly sold crack in the Projects along with Mr. Griffin. Phillips testified that, when selling, he possessed 30 to 40 nickel and dime bags of crack in tiny, colored plastic baggies similar to those Mr. Griffin was carrying when he was arrested. Hemphill claimed to carry 10 to 20 baggies when he was dealing. Both witnesses testified that they saw Mr. Griffin sell crack on the streets of the Projects, even running up to cars and selling to the drivers. Both the prior acts evidence and the charged conduct involved Mr. Griffin's possession of large quantities of baggies—nickel and dime bag quantities—of crack cocaine, and the 68 baggies he possessed when he was arrested clearly suggested an intent to sell them on the street. Because Mr. Griffin was charged with possession with intent to distribute, evidence that he

had engaged in such conduct in 1996 and 1997, prior to the conduct for which he was charged when arrested on November 12, 1997, is relevant to his intent and was sufficient to support a jury determination that Mr. Griffin committed the acts. *See Ruiz,* 178 F.3d at 881. Finally, we note that the court gave limiting instructions, thereby curbing the potential for unfair prejudice. *See Allison,* 120 F.3d at 74–75. In sum, we conclude that the district court did not abuse its discretion in admitting the evidence of the two street dealers under Rule 404(b).

**(b)**

According to Mr. Griffin, the Government attempted to establish, through the testimony of Phillips and Hemphill, that Mr. Griffin was a member of the Mason conspiracy organization. However, he submits, his alleged involvement in the Mason organization is irrelevant to this case and was unduly prejudicial to him.

Evidence admitted at trial may be excluded if it is not relevant or if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R.Evid. 401,[6] 402[7] and 403.[8] The testimony of Phillips and Hemphill certainly was relevant to and probative of the issue of Mr. Griffin's intent to distribute the crack cocaine he possessed. Hemphill testified that, once or twice a month, he delivered an ounce or 2 of crack to Mr. Griffin, and they both testified that they observed him selling crack cocaine while they were selling on the streets. However, neither Phillips nor Hemphill testified that Mr. Griffin was a member of the Mason organization. Hemphill testified that he delivered crack

**6.** Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**7.** Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible" and that "[e]vidence which is not relevant is not admissible."

**8.** Federal Rule of Evidence 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

to Mr. Griffin while Hemphill was in the Mason organization, but did not link Mr. Griffin to the organization as anything other than a customer. After reviewing the evidence in its entirety, we conclude that the district court was on solid ground in concluding that the probative value of the testimony of the two street dealers was not substantially outweighed by the danger of unfair prejudice and that the district court did not abuse its discretion in admitting their testimony.

### (c)

■ Finally, Mr. Griffin submits that the district court, by allowing Hemphill and Phillips to testify as "quasi-experts" about their experience as drug dealers selling crack on the street, abused its discretion. The Government responds that, although Hemphill and Phillips admitted that they were crack cocaine dealers who had specialized knowledge concerning narcotic and drug trafficking, they testified merely to their own observations and actions in crack cocaine transactions.

We believe the district court did not abuse its discretion in allowing Phillips and Hemphill to testify about their own crack cocaine dealings and their observations of Mr. Griffin's participation in crack cocaine sales. Their testimony was admitted under Rule 404(b) to present Mr. Griffin's prior acts in order to show his intent to distribute the crack cocaine he possessed. They also compared the baggies of drugs Mr. Griffin had thrown down to the baggies they themselves sold. They testified that the drug appeared to be crack and was packaged in small colored baggies the way they packaged and sold it. Our circuit has approved the admission of the testimony of drug dealers in similar circumstances, for such witnesses "were no strangers to crack cocaine." *United States v. Earnest,* 185 F.3d 808, 812 (7th Cir.1999). After all, "[t]hose who smoke, buy, or sell this stuff are the real experts on what is crack." *United States v. Bradley,* 165 F.3d 594, 596 (7th Cir.1999). We

hold that the district court did not abuse its discretion in admitting the testimony of Hemphill and Phillips.

### 4. Motion to Call New Expert Witness

■ Mr. Griffin's second trial was scheduled to begin on Monday, June 8, 1998. On the Friday before trial, the prosecutor notified the court and the defendant that DEA Agent Mark Keller would appear as a Government witness at trial. On the day of trial, prior to jury selection, the court heard the parties' motions in limine. At that time, Mr. Griffin moved to strike the testimony of Agent Keller. The court stated that it was troubled by the lateness of the Government's motion and asked defense counsel what prejudice the defendant might suffer if Agent Keller would be permitted to testify. Defense counsel expressly claimed no prejudice and sought no continuance or time to prepare for this witness or to call its own additional witness; he simply objected to the testimony. Thrice the court offered defense counsel the opportunity to explain the prejudice to his client or to claim additional time. Each time defense counsel said his client was not prejudiced and wished only to preserve his objection. At that point, the court denied Mr. Griffin's objection and permitted the DEA agent to testify. We review the denial of a motion in limine for abuse of discretion. *United States v. Watts,* 95 F.3d 617, 619 (7th Cir.1996).

■ Mr. Griffin submits on appeal that the district court should have excluded the DEA agent's testimony because the Government informed Mr. Griffin of it only three days before trial. This claim of last-minute surprise, this "plea for earlier disclosure fails for one very simple reason: [N]o rule of law requires it." *Id.* Neither the Constitution nor Federal Rule of Criminal Procedure 16, which governs discovery in criminal cases, requires the Government to provide the names of prosecution witnesses. *See id.; United States v. Edwards,* 47 F.3d 841, 843 (7th Cir.1995) (citing *Weatherford v. Bursey,* 429 U.S.

545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)). The defendant's Rule 16 motion for discovery and inspection did not request the names of expert witnesses. Therefore, there was no basis for excluding Agent Keller's testimony. In addition, the court gave defense counsel ample time, following Agent Keller's appearance as a witness, to prepare his cross-examination. We conclude that the district court, by admitting Agent Keller's testimony, in no way abused its discretion.

### 5. Vouching

■■■ Mr. Griffin next submits that the assistant United States attorney improperly vouched for the credibility of witness Marlon Phillips. The "vouching" statement of the prosecutor occurred during redirect examination of Phillips. Prior to it, defense counsel, on cross-examination, had emphasized the rewards Phillips would face under his plea agreement by cooperating with the Government; he also had attacked Phillips' credibility by establishing that Phillips had lied in the past. On redirect, the prosecutor elicited from Phillips that his agreement could be set aside if he was caught lying. The prosecutor then asked the following question:

Q: You mentioned that you made deliveries for Michael Mason in the Delaney project in the summer of '96?

A: Yes.

DEFENSE COUNSEL: Again, your Honor, this goes beyond the scope of cross-examination and well beyond it. This issue was not even addressed.

THE COURT: Where are you going, Counsel?

GOVERNMENT PROSECUTOR: He was asked whether or not he lied in the past. And we're going to establish that he didn't lie today, your Honor, by certain questions.

THE COURT: Didn't he testify to this already?

PROSECUTOR: Not this particular question, he hasn't, no.

THE COURT: Sustained. Let's move on.

Tr. at 232. Mr. Griffin asserts that the Government prosecutor's statement "we're going to establish that he didn't lie today" is vouching for Phillips' credibility. The Government responds that the assistant United States attorney was simply responding to the court's inquiry concerning the purpose of that line of questioning. Because Mr. Griffin did not object to the prosecutor's remark as vouching or move for a new trial at the time it was made, we review the comment only to determine whether it constitutes plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Renteria,* 106 F.3d 765, 766 (7th Cir.1997).

■■■ When we examine allegations of improper vouching, we determine, first, whether the prosecutor's remarks in isolation were improper in the abstract and then, if they were, whether the remarks, in the context of the entire record, denied the defendant a fair trial. *See United States v. Alexander,* 163 F.3d 426, 429 (7th Cir. 1998) (per curiam), *cert. denied,* —— U.S. ——, 119 S.Ct. 1082, 143 L.Ed.2d 83 (1999). With respect to the first prong, we have stated that it "is improper for a prosecutor to express her personal belief in the truthfulness of a witness, and it is improper for a prosecutor to imply that the facts not before the jury lend a witness credibility." *Renteria,* 106 F.3d at 767. We have held that it is not vouching for the prosecutor to argue that a Government witness' plea agreement provided an incentive for that witness to tell the truth. *See id.* (listing cases).

■■■ In Mr. Griffin's case, therefore, the prosecutor committed no vouching misconduct by eliciting testimony from Phillips that the plea agreement required him to tell the truth. Nor was it improper to tell the court that he intended to show, through certain questions, that Phillips had not lied in court that day. By that statement, the prosecutor neither ex-

pressed his personal belief that Phillips was a truthful person nor implied that other information not before the jury would show Phillips to be credible. Instead, his statement implied that information already before the jury would show Phillips' testimony that day to be credible. His intended questioning of Phillips thus seems to show a respect for the jury's ability to evaluate the witness' credibility, based on the facts in evidence, rather than vouching for his credibility. *See id.*

Even assuming arguendo that the Government attorney's remark could be considered improper in isolation, we believe it was a permissible inference when viewed in the context of the entire record. We determine the propriety of the remark, in that context, by considering the following factors: "(1) the nature and seriousness of the statement; (2) whether defense counsel invited it; (3) whether the district court sufficiently instructed the jury to disregard it; (4) whether defense counsel had the opportunity to respond to the improper statement; and (5) whether the weight of the evidence was against the defendant." *Alexander*, 163 F.3d at 429. Guided by these factors, we conclude that Mr. Griffin was not denied a fair trial. First, the remark was a solitary statement. Defense counsel had invited the response by objecting that the prosecutor's questioning was outside the scope of cross, and the court had asked where the questioning was going. Also, the prosecutor's answer to the court's question was not couched as personal opinion about the witness. Had defense counsel considered the statement, when made, to be vouching, he could have rebutted the comment. In addition, the court's charge to the jury that the remarks of counsel are not to be considered evidence was sufficient to remedy any harm. Finally, the weight of the evidence at trial clearly was against Mr. Griffin. This remark by the assistant United States attorney in no way denied the defendant a fair trial. *See United States v. Davis*, 15 F.3d 1393, 1401 (7th Cir.), *cert. denied*, 513 U.S. 896, 115 S.Ct. 250, 130 L.Ed.2d 171 (1994). We conclude that there was no plain error in the prosecutor's conduct or remark. *See Alexander*, 163 F.3d at 429–30.

### 6. Pre–Trial Issues

In the issues discussed above, we have upheld the district court's trial rulings after reviewing Mr. Griffin's sweeping challenges to the sufficiency of the evidence against him and the court's evidentiary determinations. We now turn to two pretrial issues Mr. Griffin raised that can be considered in short order.

### (a) Speedy Trial Act

Mr. Griffin contends for the first time on appeal that his trial did not begin within the 70 days required by the Speedy Trial Act under 18 U.S.C. § 3161(c). The district court granted the Government's motion for a continuance because the prosecutor had another trial scheduled to begin that day. The court moved the trial date from March 2, 1998, to April 22, 1998, 51 days later. According to the defendant, the interests of justice did not outweigh Griffin's interest in a speedy trial. Because Mr. Griffin failed to raise this issue in the district court by moving for dismissal of the indictment on speedy trial grounds, he has forfeited the claim on appeal. We can reverse the district court only if it was plain error for the court to have tolled the speedy trial clock because of the prosecutor's scheduling conflict. *See United States v. Baker*, 40 F.3d 154, 159 (7th Cir.1994), *cert. denied*, 514 U.S. 1028, 115 S.Ct. 1383, 131 L.Ed.2d 237 (1995).

The Speedy Trial Act requires that a defendant's trial begin within 70 days of the filing of the information or indictment unless certain excludable periods exist. *See* 18 U.S.C. § 3161(c)(1), (h). In this case, the district court granted a continuance based on § 3161(h)(8)(A), which authorizes the exclusion of time when the court finds that "the ends of justice served by taking such action outweigh the best

interest of the public and the defendant in a speedy trial." One of the factors a court ought to weigh when considering an ends-of-justice continuance is whether the failure to grant it "would unreasonably deny the defendant or the Government continuity of counsel." § 3161(h)(8)(B)(iv). In *United States v. Moutry*, 46 F.3d 598 (7th Cir.1995), we held that the district court did not abuse its discretion in continuing the trial twice for the Government's attorney—because she would be out of the country and because she was involved with another trial. *See id.* at 601 ("[A]s the Speedy Trial Act specifically provides that continuity of counsel is an acceptable basis for an 'ends of justice' exclusion of time, we find the district court's record acceptable regarding [the prosecuting attorney's] absence."). Having found no abuse of discretion in *Moutry*, we easily conclude that, here, the district court committed no plain error in tolling the speedy trial clock under § 3161(h)(8)(A).

### (b) Peremptory Challenge

Using one of its peremptory challenges, the Government struck an African–American juror and gave the court the following reason:

> She indicated that she worked for Children and Family Services, or some service such as that, which would indicate she's a social worker. And also, when asked the questions to look around the courtroom to see whether or not she recognized anybody, she did not. And based on those observations, the Government doesn't feel comfortable with her.

Jury Selection Tr. at 45. Mr. Griffin contends that the Government's exercise of its peremptory challenge violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). According to Mr. Griffin, the Government's reasons were merely pretextual and should not have been used to disqualify anyone. The defendant claims that the prosecutor, standing at a given vantage point, could not tell what the

juror could see when she was asked to look around the courtroom. Therefore, he submits, the district court abused its discretion in allowing this challenge. The Government responds that its reasons for striking the juror were valid and race-neutral. *Batson* recognizes that the trial court's findings on this issue depend largely on credibility evaluations and directs that "a reviewing court ordinarily should give those findings great deference." 476 U.S. at 98 n. 21, 106 S.Ct. 1712. We therefore review the district court's determinations on the issue of discriminatory intent only for clear error. *See United States v. James*, 113 F.3d 721, 728 (7th Cir.1997).

Once a defendant questions whether a juror has been excluded because of his race, the trial court normally conducts a *Batson* hearing, which involves three stages:

> (1) the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race; (2) once that showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question; [and] (3) the trial court, after hearing the defendant's response, must decide whether those reasons are pretextual and whether the defendant has thus carried his burden of proving purposeful discrimination.

*Mahaffey v. Page*, 162 F.3d 481, 482–83 (7th Cir.1998) (citing *Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712), *cert. denied*, —— U.S. ——, 119 S.Ct. 1786, 143 L.Ed.2d 814 (1999). In this case, when Mr. Griffin claimed that the striking of an African–American juror was discriminatory, the prosecutor gave two reasons for removing her: that the juror probably is a social worker and that she did not look around the courtroom when the court asked her to see if she recognized anyone there. The trial court found that the Government's reasons were neutral and overruled Mr.

Griffin's challenge to the peremptory challenge.[9]

■■■■ Once the trial judge has been persuaded of the neutrality of the prosecutor's reason for striking a juror, we have "no basis for reversal on appeal unless the reason given is completely outlandish or there is other evidence which demonstrated its falsity." *Morse v. Hanks,* 172 F.3d 983, 985 (7th Cir.1999) (quotation marks and citations omitted), *cert. denied,* — U.S. —, 120 S.Ct. 129, — L.Ed.2d — (1999). In our view, the reasons given were not pretextual. Our court has approved the exclusion of veniremen because of their professions. *See, e.g., Soler v. Waite,* 989 F.2d 251, 254 (7th Cir.1993) (approving the striking of an African–American cardiology technologist because her specialized knowledge might affect her ability to evaluate facts from a neutral perspective). In particular, we have held that a challenge based on a juror's social or medical work is race-neutral and understandable. *See Coulter v. Gilmore,* 155 F.3d 912, 919–20 (7th Cir.1998) (concluding, in case that might involve an insanity defense, that the prosecution's peremptory strikes of a nurse and of another juror whose mother was a social worker at a hospital were race-neutral and legitimate); *see also United States v. Serino,* 163 F.3d 91, 93 (1st Cir.1998) (commenting that it is understandable not to want a social worker to decide a drug charge). We have also upheld body language as a proper, race-neutral basis for peremptory challenges. *See United States v. James,* 113 F.3d 721, 729 (7th Cir.1997) (concluding that striking a juror who looked mad about being there was race-neutral); *United States v. Hinton,* 94 F.3d 396, 397 (7th Cir.1996) (concluding that there was no clear error in

allowing body language as the basis for strikes). We hold that, because the reasons given by the prosecutor were legitimate and race-neutral, the district court did not clearly err in allowing the peremptory strike.

### B. Sentencing Issues

#### 1. Relevant Conduct

■■■ At sentencing, in its relevant conduct calculations, the district court attributed 2 additional ounces of crack cocaine to Mr. Griffin. It based its ruling on the testimony of street dealer Hemphill, whom the court found credible, that Mr. Griffin "was distributing one to two ounces of crack cocaine once or twice a month." Tr. at 402. Mr. Griffin asserts that he was not sentenced on the basis of reliable information. Hemphill and Phillips are liars, he claims. Their testimony was incredible, uncorroborated and vague as to the quantity and value of the drugs they attributed to Mr. Griffin. As a result, Mr. Griffin submits, their testimony cannot form a sufficient evidentiary basis from which the Government can establish the quantity of drugs attributable to Mr. Griffin.

■■■ The Sentencing Guidelines instruct that a defendant's base offense level is determined by the quantity of drugs for which the defendant is accountable. *See* U.S.S.G. § 2D1.1. A sentencing court must increase a defendant's base offense level to account for "relevant conduct." *See* U.S.S.G. § 1B1.3. The type of conduct considered "relevant" when calculating the base offense level includes the conduct of the "offense of conviction," § 1B1.3(a)(1), and "all acts and omissions . . . that were part of the same course of conduct or

**9.** The Government also argues that it exercised only one peremptory challenge and did not challenge the other black juror. *Batson* is violated if even one potential juror is excluded for impermissible reasons. *See J.E.B. v. Alabama,* 511 U.S. 127, 142 n. 13, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *James,* 113 F.3d at 730 ("*Batson* demands that a prosecutor give a race-neutral reason every time he

wants to peremptorily challenge an African–American person from the jury, no matter how many African–Americans remain."). However, the fact that the Government did not challenge the other black juror further "weaken[s]" the argument that the government's strikes were based on a motive to discriminate." *United States v. Hughes,* 970 F.2d 227, 232 (7th Cir.1992).

common scheme or plan as the offense of conviction," § 1B1.3(a)(2). *See Edwards v. United States,* 523 U.S. 511, 514, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." § 1B1.3 comment. (backg'd.); *see also United States v. Watts,* 519 U.S. 148, 154, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam); *United States v. Meyer,* 157 F.3d 1067, 1081–82 (7th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999). We employ the clear error standard when reviewing the district court's determination of drug quantities that are attributable to a defendant at sentencing. *See United States v. Bacallao,* 149 F.3d 717, 719 (7th Cir.1998); *United States v. Townsend,* 73 F.3d 747, 751 (7th Cir.1996).

■ As Mr. Griffin correctly states, a defendant has a due process right to be sentenced on the basis of accurate information. We set forth the due process test in *Townsend:*

> Due process is generally satisfied when sentencing issues are resolved under the preponderance of the evidence standard. Due process is specifically satisfied when the district court determines the quantity of drugs attributable to a defendant by a preponderance of the evidence. Information may properly be used in sentencing when it has sufficient indicia of reliability to support its probable accuracy. However, this reliability standard must be rigorously applied. In addition, when aggregating drug quantities to determine whether the evidence establishes that drug transactions are part of the same course of conduct, a sentencing court should explicitly state and support its conclusion that those quantities treated as part of the same

course of conduct bore the necessary relation to the convicted offense.

*Townsend,* 73 F.3d at 751–52 (internal quotation marks and citations omitted).

■ Our review of the sentencing transcript, along with the presentence report and the Government's addendum to it, leads us to conclude that the district court did not clearly err in finding that Mr. Griffin was responsible for an additional 2 ounces of crack. The court, in determining the quantity of drugs attributable to Mr. Griffin, gave thorough consideration to the evidence before it and satisfied itself that it had sufficient indicia of reliability to support its probable accuracy. The court focused on the evidence that showed, by a preponderance, that Mr. Griffin actually possessed and sold crack cocaine.[10] Both Phillips and Hemphill testified that they saw Mr. Griffin regularly dealing crack on the streets of the Delaney Projects. Hemphill quantified the amount, as well. Although Mr. Griffin has challenged that testimony as unreliable and uncorroborated, he offered no evidence to call the reliability or correctness of the facts into question. *See United States v. Lanterman,* 76 F.3d 158, 161 (7th Cir.1996) (noting defendant's burden to present some evidence when claiming that the evidence before the court was unreliable and uncorroborated). The district court carefully scrutinized the statements of the street dealers, *see United States v. Taylor,* 72 F.3d 533, 544 (7th Cir.1995); *United States v. Beler,* 20 F.3d 1428, 1435 (7th Cir.1994), and concluded that Hemphill's testimony was credible, that Mr. Griffin "distributed one to two ounces of crack cocaine once or twice a month," and that the minimum amount, 2 ounces, was attributable to Mr. Griffin as relevant conduct. We perceive no error, clear or otherwise, in the district court's determinations of witness credibili-

---

**10.** The Government urged the court to find either (1) that Mr. Griffin was a street distributor in the Mason organization and that he was accountable for 1.5 kilograms of crack cocaine distributed by that organization, or (2) that his daily crack sales in the Delaney Projects, during the time Hemphill distributed crack to him, accounted for at least 130 grams of crack.

ty or drug quantity attributable to Mr. Griffin.[11] We conclude that the prior acts constituted relevant conduct and that there was no clear error in the district court's drug quantification for which Mr. Griffin was held accountable.[12]

## 2. Crack Cocaine or Powder Cocaine

The district court, in its relevant conduct determination, specified that the additional drugs attributable to Mr. Griffin were 2 ounces of crack cocaine.[13] Mr. Griffin contends that the Government did not establish that the drugs were crack rather than powder cocaine. He claims that no evidentiary foundation was laid—no lab reports or other credible evidence—to establish that Hemphill qualified as an expert who was able to testify about the composition of crack cocaine. The qualified narcotics expert testified that the 7.2 grams found in the bag Mr. Griffin threw to the ground was cocaine base; she did not identify it as crack cocaine. Mr. Griffin asserts that the controlled substance used to convict him therefore must be treated as powder cocaine, as he claims *United States v. Earnest*, 129 F.3d 906, 915 (7th Cir.1997) ("*Earnest I*"), and *United States v. Adams*, 125 F.3d 586, 591 (7th Cir.1997), dictate. Mr. Griffin misconstrues the

holdings in these cases. In *Adams*, we held that the application of the crack enhancement was erroneous because the government had not attempted to prove by a preponderance of the evidence that the defendant had possessed the "crack" subcategory of "cocaine base"; we therefore remanded the case for resentencing. *See* 125 F.3d at 592. In *Earnest I*, we remanded for the district court to determine whether the defendant had waived his right to challenge the enhancement and, if not, whether the government could prove that the substance was crack. *See* 129 F.3d at 917. On remand, the district court concluded that the defendant had waived his right and, even if he had not, a preponderance of the evidence had established that the substance was crack. We affirmed the district court's order upholding the earlier enhancement of the defendant's sentence. *See United States v. Earnest*, 185 F.3d 808, 815 (7th Cir.1999) ("*Earnest II*").

The drug quantity table, § 2D1.1(c) of the Guidelines, assigns a defendant's base offense level by the quantity of controlled substance, and it distinguishes between cocaine and cocaine base, treating offenses involving cocaine base much more severely.[14] The Notes to the

---

**11.** We note that Mr. Griffin has not challenged the degree of similarity between those drug sales to car drivers that Hemphill and Phillips described and the one that apparently took place when Mr. Griffin reached through a car window, as witnessed by the police officers before Mr. Griffin took off running. We have no trouble concluding that Mr. Griffin's crack cocaine sales in the summer of 1996 were evidence of the same course of conduct as the conduct of conviction in November 1997.

**12.** Mr. Griffin's final challenge concerning relevant conduct is a broad claim that he was denied his Fifth, Sixth and Fourteenth Amendment Due Process and Equal Protection rights. He gave no rationale or legal authority in support of his claim. Single-sentence attempts at appellate argument simply are not sufficient to preserve an issue for appellate review. *See* Fed. R.App. P. 28(a)(9) (describing what an appellate argument must

contain). We need not take up such an undeveloped, unsupported argument. *See, e.g., United States v. Howard*, 80 F.3d 1194, 1203 n. 9 (7th Cir.1996).

**13.** One ounce of crack cocaine (a type of cocaine base) is the equivalent of 28.35 grams. *See* U.S.S.G. § 2D1.1, Measurement Conversion Table. The court determined that Mr. Griffin possessed 7.2 grams of cocaine base at the time of arrest and it attributed 2 more ounces, or about 56.7 grams, to him as other relevant conduct. The quantity of cocaine base for which Mr. Griffin was held accountable was within the range of 50 to 150 grams of cocaine base, and therefore under the Sentencing Guidelines Mr. Griffin's base offense level is 32. *See* U.S.S.G. § 2D1.1(c).

**14.** For example, a defendant's base offense level is 32 if he possessed either 50–150 grams of cocaine base or 5–15 kilograms of cocaine.

Drug Quantity Table state that " '[c]ocaine base,' for purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base ... usually appearing in a lumpy, rocklike form." § 2D1.1(c) n.(D). The superseding indictment charged Mr. Griffin with possession with intent to distribute more than 5 grams of cocaine base, and the jury found him guilty as charged. The sentencing court is required to determine whether the controlled substance at issue consisted of cocaine, crack, or both. *See Edwards v. United States,* 523 U.S. 511, 513–14, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) ("The Sentencing Guidelines instruct *the judge* in a case like this one to determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable—and then to impose a sentence that varies depending upon amount and kind.").

 However, when the Government seeks the longer sentence available under the Guidelines for crimes involving cocaine base, it must prove by a preponderance of the evidence that the offense involved crack and not just cocaine base. *See United States v. Garrett,* 189 F.3d 610, 611–12 (7th Cir.1999); *United States v. Adams,* 125 F.3d 586, 592 (7th Cir.1997). In this case, the chemist who analyzed the drug which formed the basis of Mr. Griffin's conviction, the drug in the bag he had dropped, determined that it was cocaine base. Both Hemphill and Phillips, experienced crack dealers, testified that the drug that Mr. Griffin threw down and the police officer retrieved appeared to be crack, that the drug Hemphill delivered to Mr. Griffin was crack, and that the drug they and Mr. Griffin sold on the street was crack. Officer Campbell, who picked up the bag, described its contents as "68 total baggies ... with off-white, rock-like substance inside each green and pink baggie," Tr. at 42, and Officer Azcona identified the evidence Detective Campbell had recovered as "a bag containing suspected crack cocaine." Tr. at 63.

Our court has found the testimony of drug dealers and addicts to be credible because "those who smoke, buy, or sell this stuff are the real experts on what is crack." *United States v. Bradley,* 165 F.3d 594, 596 (7th Cir.1999). The district court found the testimony of the drug dealers Phillips and Hemphill to be credible because they were in the business of distributing crack and knew what they were selling. The court also recognized that, at sentencing, the Government's burden of proof was a preponderance of the evidence, not beyond a reasonable doubt. The Presentence Report identified the drug of the offense conduct and relevant conduct to be crack cocaine. We, like the district court, find more than sufficient evidence to establish that the narcotic drug involved in this case was crack cocaine. *See Earnest II,* 185 F.3d at 811–13; *United States v. Taylor,* 154 F.3d 675, 685 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 629, 142 L.Ed.2d 567 (1998); *United States v. Story,* 137 F.3d 518, 521 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998). We hold that the district court did not clearly err in concluding that the substance in question was crack cocaine.

### 3. Additional Witness at Continued Sentencing Hearing

 At the sentencing hearing, the Government called two witnesses, Detective Campbell and Joseph Torrence (who testified that he worked in crack houses with Mr. Griffin). Mr. Griffin called his father, James Willis. Because the defendant wished to file a memorandum concerning the differences in treatment between crack cocaine and cocaine base, the court continued the hearing and actual sentencing for a later date. Almost three weeks before the second sentencing hearing, the Government sought to call street crack dealer Phillips to testify in order to clarify discrepancies concerning dates in his trial testimony. Mr. Griffin objected to the motion; the court denied his objection.

Without citation to any authority, Mr. Griffin asserts that the district court erred in allowing the Government, over his objection, to call Phillips to testify at the continued sentencing hearing. According to Mr. Griffin, the Government had been given sufficient opportunity to present Phillips' testimony at the original sentencing hearing.

 A district court is required to exercise reasonable control over the mode and order of the interrogation of witnesses. Fed.R.Evid. 611(a). This authority is conferred on a district court "in the interests of ascertaining the truth and avoiding needless consumption of time." *United States v. Wilson,* 134 F.3d 855, 866 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 216, 142 L.Ed.2d 178 (1998). Under this rule, the district court is also permitted inquiry into further matters. *See United States v. Lopez,* 979 F.2d 1024, 1032 (5th Cir.1992) (concluding that "the integrity of the judicial proceeding was not threatened by the government's attempts to clarify the testimony" of a witness), *cert. denied,* 508 U.S. 913, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993). In fact, when the evidence is inconsistent, "the district court must conduct a sufficiently searching inquiry into the government's evidence to ensure its probable accuracy." *United States v. McEntire,* 153 F.3d 424, 436 (7th Cir.1998). We therefore accord great deference to the discretion of the trial court when ruling on a party's motion for additional testimony. *See Wilson,* 134 F.3d at 866 (concluding that district court abused its discretion in denying surrebuttal testimony but that the error was harmless).

After reviewing the sentencing hearing transcript, we are confident that Mr. Griffin has failed to demonstrate that the sentencing court abused its discretion in allowing a witness to be called at the continued sentencing hearing. The Government proffered a valid reason for offering the testimony, and Phillips' testimony succinctly clarified evidence that had been confusing. Moreover, Mr. Griffin demonstrated no prejudice to himself: He had time to file objections to the motion and to prepare for cross-examination of the witness. In our view, Mr. Griffin has not established any prejudice. We conclude that the district court in no way abused its discretion.

## Conclusion

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED