**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ofelia RENTERIA, Defendant–Appellant.**

No.  96–1967.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1997.

Decided Feb. 7, 1997.

John G. McKenzie (argued), Office of the United States Attorney, Rockford, IL, for Plaintiff–Appellee.

Tom Stanley (argued), Tarzana, CA, for Defendant–Appellant.

Before FLAUM, EASTERBROOK, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Ofelia Renteria and two codefendants who later pleaded guilty were charged in June 1995 with one count of conspiracy to possess with intent to distribute cocaine and one count of distribution of cocaine. The charges arose out of the sale of almost a kilogram of cocaine to Cora Mae Woods, a drug dealer who attempted to resell the cocaine to a government informant. When agents arrested Woods, she fingered Renteria. Pursuant to a plea agreement, Woods testified at Renteria's trial, as did two of Woods's partners in crime, Quincy Woods (Cora Mae's son) and Timothy Melton (her cousin). The jury convicted Renteria and she now appeals. We affirm.

## I.

■ Renteria first argues that the prosecutor, in the course of his rebuttal argument, improperly "vouched" for Woods, Woods and Melton. Each of these witnesses disclosed on direct examination that, in return for a reduced sentence, he or she had promised to testify truthfully at Renteria's trial. During closing arguments, defense counsel suggested that Woods and her cohorts had falsely implicated Renteria in order to curry favor with the government and receive lighter sentences. In rebuttal, the prosecutor argued that the plea agreements provided an incentive for the government witnesses to tell the truth:

> Do they have incentive to testify? Cooperate? Yes. Do they have incentive to tell the truth? Well, what's their incentive to tell the truth now? If they lie, they lose that deal. They have more incentive to tell the truth now than anyone else did because if they lie, they don't get any deal. They've blown it all.[1]

Because counsel did not object to these remarks, we will review them only to determine whether they constitute plain error. See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 731–36, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993).

■ Claims that a prosecutor has tainted a trial with improper remarks are met in this circuit with a two-step inquiry. See United States v. Johnson–Dix, 54 F.3d 1295, 1304 (7th Cir.1995). We first consider the remarks in isolation. Id. If they are improper in the abstract, we then regard them in the context of the entire record and ask whether they denied the defendant a fair trial. Id. Only if the remarks undermined the fairness of the proceedings below will we overturn a conviction. How this inquiry meshes with our plain-error analysis is a question that has generated little explicit discussion. While both our test for prosecutorial misconduct and our plain-error review under Rule 52(b) incorporate some notion of prejudice, Rule 52(b) places upon the defendant the additional burden of demonstrating that the trial error was "clear" or "obvious." See Olano, 507 U.S. at 734, 113 S.Ct. at 1777 (" 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' "). At the very least, therefore, it would seem that unpreserved claims of prosecutorial misconduct must re-

---

1. Earlier in his rebuttal argument, the prosecutor had applied this logic more specifically to Cora Mae: "So, what is Cora Mae Woods' reason to say that she's guilty[?] ... [T]he flip side of that is if she's caught in a lie, ... what would happen to Cora Mae Woods?"

late to conduct that is clearly (or obviously, or, for that matter, plainly) improper.

◾ The foregoing observation dooms Renteria's vouching argument, for we have rejected the same argument in similar cases. *See United States v. Robinson,* 8 F.3d 398, 416 n. 23 (7th Cir.1993); *United States v. DePriest,* 6 F.3d 1201, 1211 (7th Cir.1993); *United States v. Spivey,* 859 F.2d 461, 465 (7th Cir.1988). Under the rubric of "vouching," we have grouped two related evils. It is improper for a prosecutor to express her personal belief in the truthfulness of a witness, and it is improper for a prosecutor to imply that facts not before the jury lend a witness credibility. *Robinson,* 8 F.3d at 415. In either circumstance, the prosecutor threatens to undermine the jury's role as independent factfinder, in the first instance by placing the prestige of the government behind the witness, and in the second by inviting the jury to speculate as to the existence of facts that have not been subjected to the adversarial testing of the courtroom. It is clear that the prosecutor committed neither of these offenses at Renteria's trial. The plea agreements were in evidence, and the prosecutor was free to invite the jury to draw a particular inference from this evidence. *See Robinson,* 8 F.3d at 416 n. 23; *DePriest,* 6 F.3d at 1211; *Spivey,* 859 F.2d at 466. Defense counsel was free to urge a competing inference, as he did on numerous occasions. By arguing as they did, both sides respected the jury's ability to evaluate credibility based on the facts in evidence. There was no vouching.

It might be argued that it is not the suggested inference which runs afoul of the vouching rule so much as the introduction of the plea agreement itself, including its provision requiring truthful testimony. After all, if the agreement provides that false testimony will release the government from its side of the plea bargain, the fair implication is that the government has a means of evaluating the truthfulness of the witness's testimony. *See United States v. Necoechea,* 986 F.2d 1273, 1278 (9th Cir.1993) ("Although the

particular statement, 'to testify truthfully,' is nothing more than what the plea agreement says, it does mildly imply, as do all statements regarding truthfulness provisions, that the government can guarantee Gibson's truthfulness."). Under this line of thinking, the government should be precluded from introducing the contents of the plea agreement, at least until the defense has raised the issue of credibility.

◾ One problem with this argument is that it is not Renteria's argument—at least not exactly: she does not appeal the introduction of the testimony regarding the witnesses' plea agreements, nor does she mention the fact that the government referred to the plea agreements in its opening statement. Another problem with this argument is that we have considered and rejected it on several occasions. Were we to read Renteria's claim as encompassing the testimony regarding the plea agreements, it is wellsettled in this circuit that the contents of a plea agreement, including truthfulness provisions, may be elicited on direct examination. *See Robinson,* 8 F.3d at 415 n. 22; *United States v. Mealy,* 851 F.2d 890, 898–900 (7th Cir. 1988); *United States v. LeFevour,* 798 F.2d 977, 983–84 (7th Cir.1986); *see also Necoechea,* 986 F.2d at 1280 n. 4 ("[M]ost other circuits are not as concerned with whether truthfulness provisions are referred to before credibility has been challenged as [the Ninth Circuit's] cases have been.").[2] At least in this context, the prosecutor "ought to be able to extract the complete testimony of his witness, including the essential circumstances bearing on its believability, rather than forced to leave gaping holes to be poked at by his opponent." *LeFevour,* 798 F.2d at 983.

## II.

◾ Renteria's next ground for appeal can be dealt with in short order. The conspiracy with which she was charged in Count I ran from April 20 until April 24, 1995, the date of the cocaine sale charged in Count II. Before

---

**2.** We have cautioned, however, that "[i]n drafting plea agreements, the government should avoid unnecessarily repetitive references to truthfulness if it wishes to introduce the agreements into evidence." *Mealy,* 851 F.2d at 899.

trial, the government filed a motion to introduce, under Rule 404(b) of the Federal Rules of Evidence, evidence of drug transactions between Renteria and Cora Mae Woods that took place prior to April 20. The district court ruled that evidence of these uncharged offenses was admissible, not as Rule 404(b) evidence, but as direct proof of the charged conspiracy or as evidence inextricably intertwined with the charged conspiracy. Based on this ruling, the court declined to instruct the jury at the close of trial regarding Rule 404(b) evidence. The court agreed, however, to issue a cautionary instruction to the jury upon defense objection at the time such evidence was introduced, and did so on two occasions during trial. Renteria now argues that the district court's failure to tender the proposed instruction on evidence of other crimes was reversible error.

As the government correctly observes, Renteria does not appeal the district court's ruling that evidence of the uncharged transactions was admissible on the ground that they were directly or intricately related to the charged conspiracy. That being the case, the sole question before this court is whether such evidence, when properly admitted as direct proof of or intricately related to a charged conspiracy, requires a special jury instruction. This question we have answered in no uncertain terms:

> [T]his evidence gave the jury an accurate picture of the charged crime. It was not evidence of unrelated acts, admitted for a limited purpose under Rule 404(b). Therefore, the trial court was not required to give a limiting instruction either at the time of the admission of this evidence or as part of the charge to the jury.

*United States v. Akinrinade,* 61 F.3d 1279, 1286 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 541, 133 L.Ed.2d 444 (1995).

### III.

Renteria's final issue for appeal is equally unsubstantial. She argues that the district court's *Pinkerton*[3] instruction impermissibly "required" the jury to find her guilty of the distribution offense charged in Count II if it found her guilty of the conspiracy charged in Count I. The instruction given read as follows:

> A conspirator is responsible for offenses committed by her fellow conspirators if she was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy. Therefore, if you find the defendant guilty of the conspiracy charged in Count 1 of the indictment and if you find beyond a reasonable doubt that while she was a member of the conspiracy, a fellow conspirator committed the offense in Count 2 of the indictment in furtherance or as a natural consequence of that conspiracy, then you should find the defendant guilty of Count 2 of the indictment.

We believe that this instruction, drawn directly from the Seventh Circuit's pattern jury instructions, correctly stated the law as it pertains to the liability of a conspirator for the acts of her coconspirators. *See United States v. Vega,* 72 F.3d 507, 517–18 (7th Cir.1995), *cert. denied sub nom. Early v. United States,* —— U.S. ——, 116 S.Ct. 2529, 135 L.Ed.2d 1053 (1996).

The judgment of conviction is AFFIRMED.

---

3. See *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946).