In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3602

United States of America,

Plaintiff-Appellee,

v.

Osmund Clarke,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 98 CR 121--David F. Hamilton, Judge.


Argued April 11, 2000--Decided September 14, 2000


  Before Manion, Diane P. Wood, and Evans, Circuit
Judges.

  Manion, Circuit Judge.  Osmund Clarke and nine
others were indicted for conspiring to distribute
drugs. Clarke was also indicted for distributing
drugs and carrying a firearm during a drug
offense. Clarke and two of his co-defendants went
to trial. But after a witness blurted out that
one of Clarke's co-defendants had an outstanding
arrest warrant for car-jacking, the district
court declared a mistrial for all three
defendants on the conspiracy charge. The district
court, however, allowed the government to proceed
with trying Clarke on the drug distribution and
weapon possession charges, and Clarke was
convicted of both offenses. On appeal Clarke
seeks a new trial, claiming that the district
court erred in not declaring a mistrial on these
two charges, in admitting evidence that was
seized during his arrest, and in allowing the
government to make allegedly unfairly prejudicial
statements during closing argument. Because the
district court did not err with respect to any of
these issues, we affirm.

I.  Background

  Clarke was allegedly involved in a far-reaching,
multi-tiered drug distribution conspiracy. One
alleged member of the conspiracy was Clarke's
good friend, Gosha. But Gosha's friendship with

Clarke was evidently fleeting, because he turned state's evidence and testified about three occasions when he and Clarke sold cocaine to Hart, an undercover informant. Hart also testified as to Clarke's participation in the three drug sales. Furthermore, both Hart and Gosha testified that Clarke was an "enforcer" on one of these transactions when Gosha and Clarke suspected that Hart was a snitch. They searched Hart but did not find the wire that was hidden in his underwear. Clarke was carrying a 9mm handgun on the occasion where there was a brief (or fortunately for Hart, not a brief) search of Hart.

Based upon Hart's information and controlled purchase, the police went to arrest Clarke at his girlfriend's house. The police found Clarke in the living room within arm's length of a couch. In arresting him, they discovered a handgun stuffed between the sofa cushions and within his reach. The police obtained his girlfriend's written consent to search the premises, and they discovered bullets for the gun, a hand-held scale, and a small amount of marijuana.

Clarke and nine others were charged with one count of conspiracy to possess with intent to distribute and conspiracy to distribute cocaine and cocaine base in excess of 5kg in violation of 21 U.S.C. sec.sec. 841(a)(1) and 846. In addition, Clarke was charged with three counts of distribution of cocaine base in excess of 50 grams in violation of 21 U.S.C. sec. 841(a)(1) and one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. sec. 924(c). Clarke and two of his co-defendants went to trial together on the conspiracy charge; the government also proceeded against Clarke at the same trial on the other two charges.

On the morning of trial, well after the deadline for filing pretrial motions, Clarke filed an emergency motion to suppress everything that was seized at his girlfriend's house. The motion was accompanied by an affidavit from Clarke's girlfriend wherein she stated that her consent to search was given under duress; according to her, the police had held her down on the floor and handcuffed her and told her that if she did not cooperate they would take away her children. The government objected to the motion as untimely. At the hearing, Clarke acknowledged that the motion was untimely, but he argued that if the court was persuaded by it, then "one of the charges" against Clarke could be dismissed. The court asked Clarke if he was specifically referring to the firearm, and Clarke represented to the court that he was. The court again asked Clarke whether the motion at this point was limited to the gun,

and Clarke confirmed that it was.

Based upon Clarke's representations, all of the argument on the motion to suppress addressed only the admissibility of the gun. The court heard testimony from both Clarke's girlfriend and the arresting officer. The court found both the arresting officer and Clarke's girlfriend credible, but it denied Clarke's motion to suppress the gun. The court reasoned that regardless of whether the consent was given under duress, it was not needed for the handgun to be properly seized because it was obtained during a lawful search incident to arrest. Because the only issue Clarke presented to the court concerned the handgun, the court did not consider whether the police were allowed to search her house. Later in the trial, the court said that with respect to the motion to dismiss, the issue with the gun was resolved, and that the other issues were not raised. Clarke did not dispute this.

Trial proceeded and the government called a police officer (Brooks) to the stand. During his testimony, he stated that one of Clarke's two co-defendants (Harris) had an outstanding warrant for car-jacking and that this was a violent crime. Harris moved for a mistrial, and after a conference with counsel the district court instructed the jury to disregard the officer's testimony:

Ladies and Gentlemen, the answer to the last question that was asked Officer Brooks before the break is stricken from the record. You are ordered to disregard it. Whether Mr. Harris was a suspect in another crime is utterly irrelevant in this case. Any such accusations are entitled to no credibility and no consideration whatsoever. It was highly improper for Officer Brooks to even mention them. It would be even worse if you were to consider such matters in your deliberations. I instruct you that you may not consider such matter at all.

The court allowed the trial to continue and then held a hearing on Harris's motion. During the hearing, Clarke joined in, also requesting a mistrial on the conspiracy charge against him.

The district court granted Harris's motion for a mistrial, concluding that its curative instruction was insufficient to guarantee him a fair trial. Although Officer Brooks's car-jacking comment did not pertain to Clarke, the district court granted him (and the third co-defendant) a mistrial on the conspiracy charge, too. After Clarke was unable to obtain a plea bargain on the substantive counts, he requested that the court

declare a mistrial on the gun possession and distribution of cocaine charges as well. While much evidence about the conspiracy had been heard at that point, little of it was tied to Clarke. The district court thought that the evidence about Clarke possessing a gun and distributing drugs was discrete enough from the evidence about the conspiracy that the jury could focus on the evidence pertaining to the gun possession and drug distribution charges. Before the trial continued, however, the district court instructed the jury that the conspiracy charge against Clarke had been removed from their consideration, and that they should not ask why or hold it against him. He also informed them that the only charges that remained were the drug distribution and gun possession charges, and that Clarke was presumed innocent of these charges.

At the jury instructions conference, Clarke asked the court to give a similar admonition to the jury. The court proposed revising an instruction so that it directed the jury not to consider "evidence relevant only to" the conspiracy charge. Clarke advised the court that the revised instruction met his concerns, but the government objected because it would confuse things, relevancy being a legal question. The court overruled the objection and revised the instruction as Clarke had requested. Nevertheless, before the court read the instruction the next day, Clarke objected to it. The court reminded Clarke that the instruction was revised at his request and over the government's objection. It then read the instruction, which stated:
I remind you that the conspiracy charge against the defendant Mr. Clarke as well as the charges against defendants Chris Harris and Jimmy Campbell have been removed from your consideration and are no longer before you for decision. Do not concern yourself with this development and do not speculate about it. The removal of that portion of the case must not influence your consideration of the charges against Mr. Clarke that you must decide.
The fact that we have only one defendant left in this trial should be of no concern to you because whatever your verdict is, if you do reach a verdict, it has to be based solely upon the evidence that was received in this courtroom as it related to the remaining charges against Mr. Clarke. You should not let evidence relevant to only [the conspiracy charge] affect your consideration of the [remaining] charges against Mr. Clarke.

(Emphasis added.) The court also instructed the jury that a separate crime was charged in each count and that each count, as well as the

evidence pertaining to it, should be considered separately. Moreover, it instructed the jury that the drug distribution charges were based on what happened on three occasions and that the weapons charge was based on what happened on one occasion.

One last background fact is significant for this appeal. Throughout the trial, Clarke had criticized the credibility of the government's star witnesses, Gosha (who turned state's evidence) and Hart (who was a paid informant). During closing argument, the government pointed out that under his plea agreement, which was in evidence, Gosha had to testify truthfully. It then argued that based on the evidence, he had done so:

Now, I'm not going to stand up here and tell you that he did not receive a benefit [for his testimony]. He clearly did. But in jury selection you all said that you would look into the agreement that he made and listen to all the evidence. And take a look at the agreement Donell Gosha made. He has to testify truthfully. Review his plea agreement. And I submit to you, based on the evidence that you have heard from him, from Jason Hart, from the police officers in this case, [and from] the physical evidence that Donell Gosha did just that[;] good, bad and indifferent he told how it was[;] he testified truthfully.

To show that Hart testified truthfully, the government gave examples where Gosha corroborated Hart's testimony. It then stated "[s]o, clearly he's telling the truth about Donell Gosha. Why then has there been any reason to show that he would lie about Osmund Clarke. He has no incentive to lie about Osmund Clarke. That is why you should trust Mr. Jason Hart. He is equally credible with regard to Donell Gosha as he is with Osmund Clarke." The government then discussed how Gosha's testimony corroborated Hart's testimony about Clarke. Clarke did not object to these statements. The jury found him guilty of both offenses, and he appeals.

II.  Discussion

Clarke contends that the district court committed three errors, and that each independently requires reversal of his conviction: not suppressing the bullets and the hand-held scale that were obtained from the search of Clarke's girlfriend's house and which were admitted into evidence; not granting a mistrial on the gun possession and drug distribution charges; and allowing the government to "vouch" for the credibility of Gosha and Hart

during closing argument. Clarke further contends that even if each error, by itself, does not warrant a new trial, then certainly the cumulative effect of the errors does. See United States v. Rogers, 89 F.3d 1326, 1338 (7th Cir. 1996) ("[T]he cumulative effect of trial errors may deprive a defendant of his constitutional right to a fair trial."). For the following reasons, we conclude that the district court did not err in any of these respects.

A.   The Motion to Suppress

"Federal Rule of Criminal Procedure 12(b) requires that motions to suppress evidence be raised prior to trial." United States v. Mancillas, 183 F.3d 682, 703 (7th Cir. 1999). District courts may set deadlines for such motions, Fed. R. Crim. P. 12(c), and a failure to follow such a deadline waives appellate review of the issue. Fed. R. Crim. P. 12(f). See also Mancillas, 183 F.3d at 703; United States v. Krankel, 164 F.3d 1046, 1051 (7th Cir. 1998). For cause, though, district courts can relieve the party of his waiver of a suppression issue. See Fed. R. Crim. P. 12(f); United States v. Evans, 131 F.3d 1192, 1193 (7th Cir. 1997); United States v. Moralez, 964 F.2d 677, 680 (7th Cir. 1992).

Clarke violated the court's pretrial deadline by not filing his motion to suppress until the morning of trial; as a result, he waived any suppression issues for appellate review. See Mancillas, 183 F.3d at 704 (late filing waived issue); accord Moralez, 964 F.2d at 681. But then, for whatever reason, the district court relieved him of his waiver with respect to his motion to suppress the gun. While Clarke had sought to suppress all of the evidence obtained during the search of his girlfriend's house, after the government objected to the untimeliness of the motion, Clarke sought only to exclude the gun. He does not argue to us, as he could, that we should excuse his waiver of the suppression issue as to the bullets and the scale because he had cause for filing his motion to suppress late. See Evans, 131 F.3d at 1193 (cause required to excuse waiver). Instead, he attempts to distort the picture by portraying the district court as ignoring the part of his motion pertaining to the bullets and the scale. Because Clarke does not argue that he had cause for filing his motion late as is required to excuse his waiver, he has not only waived appellate review of the issue of suppressing the bullets and the scale, Mancillas, 183 F.3d at 703; Krankel, 164 F.3d at 1051; he has also waived our review of the issue of his waiver under Rule 12(f). See Evans, 131 F.3d at

1193.

Thus far, we have been treating Clarke's failure to move timely to suppress the items seized at his girlfriend's house as a "waiver" of their admissibility consistent with the Fourth Amendment. A "waiver" in the technical sense, however, arises from an intentional relinquishment of a right; a "forfeiture" occurs when a party fails to assert, or to timely assert, a right. See United States v. Johnson, 2000 WL 1060596, at *1 (7th Cir. Aug. 3) (Waiver "is canonically defined as an intentional relinquishment of a right"; forfeiture "is where the right is taken away from its holder as a penalty for failure to assert it in a clear and timely manner."); United States v. Perry, 2000 WL 1056284, at *2 (7th Cir. Aug. 1) ("Waiver is the intentional relinquishment of a known right. Forfeiture, on the other hand, is the failure to make a timely assertion of a right. 'Where waiver is accomplished by intent, forfeiture comes about through neglect.'") (citations omitted). This distinction is significant because "waived" errors are unreviewable, while forfeited errors are reviewable, but only for plain error. See Perry, 2000 WL 1056284, at *2. Clarke's Rule 12(f) "waiver" of the suppression issue therefore may be more accurately viewed as a forfeiture because it is based on his failure to timely assert his rights.

But Clarke has another problem aside from his Rule 12(f) "waiver" (or forfeiture) of his motion to suppress the bullets and the scale. He intentionally waived this issue by twice representing to the court that his motion was limited to the gun, and by keeping silent when the court later twice stated that the motion was so limited. See Johnson, 2000 WL 1060596, at *1 ("What this is is a case of implicit waiver in the strict, the intentional sense. . . . The only plausible inference from the defendant's conduct is that he acquiesced in the denial by judicial inaction of his motion . . . and thereby deliberately relinquished his right . . . ."); United States v. Wilson, 962 F.2d 621, 625 (7th Cir. 1992) ("We conclude that Wilson in effect waived this issue at trial by failing to call to the court's attention the lack of a ruling on his suppression motion . . . ."). As a result, we may not review whether these items were admitted consistent with the Fourth Amendment. Perry, 2000 WL 1056284, at *2 (waived errors are unreviewable).

Finally, even if Clarke's failure to timely move to suppress (and his later narrowing of that motion to pertain only to the gun) is viewed as a forfeiture rather than a waiver, we would review

the admissibility of the bullets and the scale for plain error. See Fed. R. Crim. P. 52(b); Perry, supra; Wilson, 962 F.2d at 625. The district court did not make findings on the consent of Clarke's girlfriend to search the house. Nevertheless, the record as a whole is sufficient to demonstrate that the admission of the bullets and the scale was not plainly erroneous. Not only was there some evidence to support the search, but the only evidence to rebut the finding of consent for the search was the untimely filing (on the morning of trial) of Clarke's girlfriend's affidavit. There is no plain error here. See United States v. Olano, 507 U.S. 725, 734 (1993) ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'"); United States v. Renteria, 106 F.3d 765, 766-67 (7th Cir. 1997).

## B. The Motion for a Mistrial on The Substantive Offenses

"A trial judge has broad discretion in deciding whether, in the context of the entire trial, a defendant's motion for a mistrial should be granted." United States v. Mealy, 851 F.2d 890, 902 (7th Cir. 1988). The reason for conferring this broad discretion on the judge is that he is in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial. Id.; see also United States v. Miller, 199 F.3d 416, 421 (7th Cir. 1999); United States v. Lomeli, 76 F.3d 146, 149 (7th Cir. 1996). As a result, we will reverse a decision denying a mistrial only if the district court has abused its discretion, Miller, 199 F.3d at 421; Lomeli, 76 F.3d at 149, which means that we must affirm unless we have a strong conviction that the district court erred. United States v. Cheska, 202 F.3d 947, 950 (7th Cir. 2000). The ultimate focus of our inquiry is whether the defendant was deprived of a fair trial. United States v. Brack, 188 F.3d 748, 759 (7th Cir. 1999); United States v. Evans, 994 F.2d 317, 324-25 (7th Cir. 1993). In this regard, we have long "upheld a trial court's exercise of discretion in issuing a cautionary instruction, rather than declaring a mistrial, to cure any potential prejudice." Mealy, 851 F.2d at 902; see also Miller, 199 F.3d at 421; Lomeli, 76 F.3d at 149./1

Clarke argues that because the jury heard a significant amount of conspiracy evidence that had little if anything to do with the drug distribution and gun possession charges, the district court should have declared a mistrial on these offenses, too. He argues that while a limiting instruction would normally prevent him

from suffering any undue prejudice from the jury hearing such evidence, the instruction here was not only ineffective; it was improper as a matter of law because it asked the jury to make a determination about relevancy (it was not to consider evidence that was "relevant to only the conspiracy charge"), which, under the Federal Rules of Evidence, is a legal question for the court. See Fed. R. Evid. 104(a) and 401. Clarke argues that this determination is particularly difficult because the jurors were in effect instructed to consider some of the conspiracy evidence (that which also pertained to the substantive offenses) without the court telling them precisely what that evidence was. According to Clarke, the only way to avoid unfair prejudice was to instruct the jury to disregard all of the conspiracy evidence (but according to him, it is doubtful the jury could do that either).

As an initial matter, some of the conspiracy evidence that the jury heard was in fact also relevant to the distribution charge. To be guilty of cocaine distribution, a person not only has to distribute cocaine; he has to knowingly and intentionally distribute cocaine and know that the substance he was distributing was a controlled substance. See 21 U.S.C. sec. 841(a)(1); see also United States v. Johnson, 127 F.3d 625, 628 (7th Cir. 1997). Clarke emphasized that while he was present for the drug transactions with Hart, he did not know that it was cocaine that was being sold. Gosha's testimony that Clarke and he were actively involved in obtaining cocaine which was then delivered to Hart was not only relevant to the conspiracy, then, it was also relevant to the distribution charge by rebutting Clarke's claimed lack of knowledge as to the nature of the transaction in which he was involved. Cf. United States v. Hughes, 213 F.3d 323, 329 (7th Cir. 2000) (witness' testimony about defendant's "drug activity was directly relevant to establishing" the personal knowledge of the government's witnesses).

The question then becomes whether the court's instruction was so confusing and the task it assigned the jury so difficult that it rendered the instruction ineffective. Jury instructions must be examined as a whole. United States v. Thornton, 197 F.3d 241, 254 (7th Cir. 1999). An instruction is not ineffective "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect will be 'devastating' to the defendant." United States v. Humphrey, 34 F.3d 551, 556-57 (7th Cir. 1994). Here, the instruction not to consider "evidence relevant to only the conspiracy charge"

immediately followed the admonition to the jury that its verdict had "to be based solely upon evidence that related to the remaining charges against Mr. Clarke." Thus, the directive that one clearly gets is that the jury cannot convict Clarke of the gun possession and drug distribution charges based on his alleged activities in the conspiracy that had nothing to do with carrying a gun or distributing drugs. This general parameter was confirmed by the remaining instructions, which told the jury that a separate drug distribution or gun possession crime was charged in each count and that each crime, as well as the evidence pertaining to it, had to be considered separately; and, moreover, the evidence that pertained to those separate crimes concerned what transpired on three dates when Clarke allegedly sold drugs and on one of those occasions when he allegedly carried a gun. Thus, the jury was instructed not to consider evidence apart from what transpired on those occasions.

Furthermore, the jury was capable of performing this task without the court specifically telling them what that evidence was. Juries are often asked to separate or exclude evidence as pertaining "only" to certain charges or certain defendants without courts spelling out exactly what that evidence is. See United States v. Cusimano, 148 F.3d 824, 829-30 (7th Cir. 1998) (instruction which directed jury to consider evidence "only" for the conspiracy alleged in indictment and not for other conspiracies that the evidence established was not plainly erroneous). In United States v. Canino, 949 F.2d 928, 936-37 (7th Cir. 1991), as in this case, we affirmed the denial of a mistrial in a drug distribution conspiracy as to certain defendants after granting a mistrial for a co-defendant. In rejecting the remaining defendants' requests for a general mistrial due to the absence of their co-defendant, we noted that the "jury was instructed not to concern itself with the absence of [the co-defendant], and to decide the case against each defendant based on the evidence introduced against the individual defendant." Id. at 937. In this case, we agree with the district judge that the evidence about Clarke distributing drugs and carrying a gun was discrete from the conspiracy evidence, and that the jurors were capable of excluding evidence that had nothing to do with Clarke possessing a gun or distributing drugs. Their ability to do so is particularly likely given the court's guidance that the evidence about these two offenses concerned what occurred on three dates, not at other times. See Cusimano, 148 F.3d at 830 (jury instruction that was allegedly confusing because it told jurors to consider all criminal activity was not plainly

erroneous when it later referred to the specific crime at issue). In sum, while it would have been better if the court had not used the term "relevant", and it might have been clearer if the court had not said "only", we do not think that, in context, "there is an overwhelming probability," Humphrey, supra, that these two words so confused the jury as to render the instructions ineffective or erroneous, thereby depriving Clarke of a fair trial. Thornton, 197 F.3d at 254 ("We will not overturn a conviction merely because the addition or subtraction of a few words might have improved a defendant's chance of acquittal, but only if the instructions so misguided the jury as to prejudice the defendant.")./2

Finally, we disagree with Clarke that no matter what instruction the district court would have given, a mistrial would have been required because the jury could not disregard "the mountain of irrelevant" conspiracy evidence. Juries are presumed to follow instructions. Humphrey, 34 F.3d at 556; United States v. Ferguson, 935 F.2d 1518, 1527 (7th Cir. 1991). Here, the court promptly instructed the jury not to consider Officer Harris's car-jacking comment (which did not pertain to Clarke anyway) or evidence of the conspiracy that had nothing to do with the substantive offenses. Clarke has not persuaded us that the normal presumption should not apply here. Although in the three days of trial before a mistrial was declared the jury heard a lot of evidence about the conspiracy, little of it was tied to Clarke. In this "mountain" of evidence, the lone reference to Clarke's involvement is contained in less than one-half of one page of the trial transcript. See Humphrey, 34 F.3d at 557 (in considering whether an instruction cured improper testimony and ensured a fair trial, the court should consider the efficacy of the instruction and "the record as a whole"); Ferguson, 935 F.2d at 1527-28 (immediate curative instruction and addressing improper testimony in final instruction adequately addressed "single isolated statement"). Clarke's concern that there is a strong likelihood that the jury attributed to him a series of acts is unfounded. If anything, the evidence presented shows he did not commit most of the acts alleged concerning the conspiracy.

On the contrary, Clarke was convicted because the evidence was sufficiently strong that he distributed drugs and carried a handgun while doing so. Gosha and Hart's testimony as to Clarke's involvement on these transactions was specific and substantial. Although Clarke points out that they are questionable sources, the jury (as we will next see) took this into account. But

it also took into account the fact that their testimony corroborated each other's and was in turn corroborated by the presence of the hand-held scale and the 9mm handgun. In short, Clarke was not unfairly convicted by virtue of conspiracy evidence that was not tied to him; rather, he was convicted because of the testimony and physical evidence that he was a drug dealer who carried a gun while at work. See Thornton, 197 F.3d at 250 (not an abuse of discretion to deny mistrial based on allegedly false testimony that comprised a tiny fraction of a witness' testimony that went on for 147 transcript pages, and when other witnesses and physical evidence showed defendant's extensive role in cocaine distribution conspiracy); see also Ferguson, 935 F.2d at 1528-29 (jury convicted defendant of possession of cocaine with intent to distribute because of strong evidence that he committed the offense, not because of one witness' improper remark); United States v. Miroff, 606 F.2d 777, 782 (7th Cir. 1979) (improper testimony on three occasions in a 350 page transcript did not unfairly prejudice the defendant). As a result, we are not close to being "firmly convinced" that he was deprived of a fair trial.

   C.,The Prosecutor's Statements During Closing Argument

   Lastly, Clarke argues that in discussing the credibility of Gosha and Hart, the prosecutor impermissibly "vouched" for them during closing argument. Because Clarke did not object to the prosecutor's statements at that time, we review this claim for plain error. See Fed. R. Crim. P. 52(b); Renteria, 106 F.3d at 766. "At the very least," under this standard, "unpreserved claims of prosecutorial misconduct must relate to conduct that is clearly (or obviously, or, for that matter, plainly) improper." Renteria, 106 F.3d at 766-67.

   "Claims that a prosecutor has tainted a trial with improper remarks are met in this circuit with a two-step inquiry. We first consider the remarks in isolation. If they are improper in the abstract, we then regard them in the context of the entire record and ask whether they denied the defendant a fair trial. Only if the remarks undermined the fairness of the proceedings below will we overturn a conviction." Id. at 766. As to the first step, "we have grouped two related evils" under "the rubric of 'vouching.'" Id. at 767. "It is improper for a prosecutor to express her personal belief in the truthfulness of a witness, and it is improper for a prosecutor to imply that facts not before the jury lend a witness credibility." Id.

Clarke first complains that the government "made overt statements of personal belief as to the credibility of Hart and Gosha." We disagree. With respect to Gosha, the government said "I submit to you, based on the evidence that you heard from him, from Jason Hart, from the police officers in this case, [and from] the physical evidence that Gosha did just that[;] good, bad and indifferent, he told how it was[;] he testified truthfully." (Emphasis added.) Clearly, then, the government was arguing that Gosha told the truth based upon what was in the record, not upon the prosecutor's own personal belief. Earlier in his argument the prosecutor made a similar statement. He said that the two witnesses described both their own involvement and Clarke's, rather than embellishing Clarke's role and minimizing their own. "And the reason why they didn't, I submit to you, is that they told you the truth just as it was . . . good, bad, indifferent--about Mr. Clarke's involvement." Similarly, the government argued that Hart's testimony was credible by giving specific examples where his testimony was corroborated by Gosha and then saying "[s]o, clearly he's telling the truth about Donell Gosha." (Emphasis added.) It then argued that Hart "is equally credible with regard to Donell Gosha as he is with Osmund Clarke" by immediately showing how Gosha corroborated Hart's testimony about Clarke's actions. It is not accurate to say then--and at any rate, it is not patently obvious--that the prosecutor was expressing his personal belief.

Clarke also complains that the government improperly referred to Gosha's obligations under the plea agreement to tell the truth. We have repeatedly upheld the government's ability to point out that its witnesses, under their plea agreements, are required to testify truthfully. See Renteria, 106 F.3d at 766-67 (not vouching to argue that witnesses testified truthfully in compliance with their plea agreements so that they would not lose benefits of the agreements); see also Thornton, 197 F.3d at 252 ("The proffer letters and plea agreements merely laid out the terms and conditions of the agreements. Each side could urge competing inferences--as indeed the defendants did--but the jury's role as independent fact finder was not undermined."); United States v. Griffin, 194 F.3d 808, 823 (7th Cir. 1999) ("[T]he prosecutor committed no vouching misconduct by eliciting testimony from [the witness] that the plea agreement required him to tell the truth."). But Clarke argues that the government here went further and guaranteed that Gosha in fact told the truth by stating that under the plea agreement, Gosha "has to testify truthfully."

We do not see much of a difference, though, between on the one hand introducing plea agreements into evidence and reading that their terms require the witnesses to tell the truth, and on the other stating that under a plea agreement's terms, a witness is required to tell the truth. And this is what the government did. The plea agreement was in evidence, and this statement was both immediately preceded and followed by pleas to the jury to look at the evidence in the record to see if, as required by the agreement, Gosha told the truth: "[I]n jury selection you all said that you would look into the agreement that he made and listen to all the evidence. And take a look at the agreement Donell Gosha made. He has to testify truthfully. Review his plea agreement. And I submit to you, based on the evidence . . . he testified truthfully." We agree with the government that the way to interpret this statement is that the evidence showed that Gosha complied with the plea agreement, not that Gosha told the truth simply because he entered into the agreement. At any rate, because Clarke did not object below to this statement, it is not plainly obvious that the statement in question means what he says it does.

Furthermore, even if the remark about the plea agreement was improper, Clarke does not satisfy the second step in the inquiry: in the context of the entire record, the remark did not deprive him of a fair trial. Renteria, 106 F.3d at 766. To determine the remark's effect on the fairness of the trial, we look at five factors: "1) the nature and seriousness of the prosecutorial misconduct; 2) whether the conduct of the defense counsel invited the prosecutor's remarks; 3) whether the trial court's instructions to the jury were adequate; 4) whether the defense was able to counter the improper arguments through rebuttal; and 5) the weight of the evidence against the defendant." Cusimano, 148 F.3d at 831-32. Here, the prosecutor's comment about the plea agreement was "not egregious." Id. at 832. Furthermore, Clarke invited this comment by repeatedly attacking Gosha's truthfulness due to the fact that he entered into a plea agreement. Id. Because Clarke did not object "at the time, the trial court did not instruct the jury specifically in regard to the prosecutor's comments. However, the court did instruct the jury that closing arguments are not evidence . . . ." Id. It stated that:

Closing arguments will be for the purpose of discussing the evidence. Mere assertions alone by any of the lawyers in opening statements or closing arguments do not constitute any evidence whatsoever in this case. You should not consider

the opening or closing statements as proof of any facts. You should only consider them as they might be confirmed or disconfirmed by evidence that you heard during the testimony in the case.

We have already stated that such an instruction can effectively cure prosecutor's statements about the truthfulness of witnesses who have signed plea agreements. See United States v. Robbins, 197 F.3d 829, 843 (7th Cir. 1999). Since the government made its statement about Gosha's plea agreement in its initial remarks during closing argument, Clarke had the opportunity to rebut this comment, and in fact did so by again challenging Gosha's motives due to his plea agreement. Finally, "the weight of the evidence supports" Clarke's conviction. Cusimano, 148 F.3d at 832. In light of the above factors, Clarke "cannot persuade us that the prosecutor's remarks deprived him of a fair trial." Id. (assuming government's statement that its witnesses "are bound by written plea agreements which require them to tell the truth" was improper, the statement did not deprive the defendant of a fair trial).

III.  Conclusion

   Under Rule 12(f), Clarke "waived" his motion to suppress the bullets and the scale that were obtained from his girlfriend's house by not timely filing this motion, and he waived our review of his Rule 12(f) waiver by failing to argue that he had cause for filing it out of time. In the alternative, if Clarke's failure to timely file his motion to suppress is a forfeiture, then the district court did not plainly err in not suppressing these items. Clarke, however, also intentionally waived his right to suppress the bullets and the scale by representing to the district court that he was no longer pursuing the motion to suppress these items.

   Furthermore, the district court did not abuse its discretion in denying Clarke's motion for a mistrial because the jury instructions ensured that he would receive a fair trial, and together the testimonial and physical evidence was strong that Clarke distributed drugs and carried a gun while doing so. Finally, the government did not vouch for the truthfulness of its star witnesses during closing argument. But however one interprets the prosecutor's statements, they did not deprive Clarke of a fair trial.

   For the foregoing reasons, the judgment of the district court is AFFIRMED.

/1 Citing United States v. Bruscino, 687 F.2d 938, 940 (7th Cir. 1982) (en banc), Clarke argues that the test for a mistrial is whenever there is a "reasonable possibility" that irrelevant or improper evidence "may have affected the verdict." This case is not applicable; it concerns situations where a jury receives material that is not in evidence.

/2 It is worth noting that Clarke's attorney did not think that these two words would baffle the jury as he agreed to the court including them, specifically stating that the instruction met his concerns about the jury potentially considering the conspiracy evidence.