In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2495, 00-2701

United States of America,

Plaintiff-Appellee,

v.

Johnelle Elem and Odell Jennings,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97-CR-765--Paul E. Plunkett, Judge.

Argued September 28, 2001--Decided October 23, 2001


   Before Flaum, Chief Judge, and Bauer and
Evans, Circuit Judges.

   Flaum, Chief Judge.  Defendants Johnelle
Elem/1 and Odell Jennings (collectively
"Defendants") appeal the district court's
denial of a motion for a new trial based
upon the government's failure to comply
with Brady v. Maryland, 373 U.S. 83
(1963), and the Jencks Act, 18 U.S.C.
sec. 3500. Jennings and Elem also contend
that a new trial is warranted because the
prosecution improperly bolstered a
government witness's credibility. For the
reasons stated herein, we affirm.

I.  Background

   On February 5, 1998, a federal grand
jury returned a ten-count superseding
indictment charging Jennings, Elem, and
Clarence Anderson/2 with participating
in a series of five armed bank robberies.
Anderson pleaded guilty to one count of
armed bank robbery and testified before
the grand jury that returned the
superseding indictment against Jennings
and Elem. Anderson also testified for the
government at Jennings's and Elem's
trial.
   At trial, Anderson's testimony described
each of the five armed bank robberies and
identified Jennings and Elem as
participants in the robberies. Moreover,
on direct examination the prosecution
asked Anderson about the lawyer provided

to him during post-arrest questioning.
The following colloquy took place between
the prosecutor and Anderson:

Q. During the day did you ask to speak
with an attorney?

A. Yes.

Q. And did the FBI allow an attorney to
come and visit you?

A. Yes.

*   *   *

Q. And was he a private attorney?

*   *   *

A. No.

Q. A private attorney that you had
retained?

A. No.

Q. So how did he come to be your attorney?

A. He's a government attorney.

Q. Is he a Federal Defender?

A. Yes.

Q. I mean, does he work for the United
States Attorney's Office or the defense--

A. Yes. The United States Attorney's
Office.

Q. In the past?

A. Yes.

Q. Does he work for the U.S. Attorney's
Office now?

A. No.

Q. So who does he work for now?

A. The government--the public defenders
[sic] office.

During the exchange, the district judge
overruled defense counsel's relevancy
objection. Following a four-day trial, a
jury found both Jennings and Elem guilty
as charged.

Approximately seven months after the jury rendered its verdict, Defendants learned that a journalist named Shane DuBow published an article in GQ Magazine about the bank robberies. DuBow had been a customer in one of the banks at the time of the robbery and interviewed Anderson during the course of his research for the article. The district court expressed concern that DuBow's interviews may have influenced Anderson's trial testimony. Accordingly, the district judge authorized Defendants to depose both DuBow and Anderson regarding the timing of the interviews.

During the DuBow and Anderson depositions, Jennings and Elem learned for the first time that Anderson had testified before the grand jury that returned the superseding indictment against them. However, the prosecution had never furnished Defendants with a transcript of Anderson's testimony. Jennings and Elem then reviewed Anderson's grand jury testimony and DuBow's interview notes and identified several inconsistencies with Anderson's trial testimony, including the following:

(1) In his direct examination at trial, Anderson testified that he supported himself by robbing drug dealers, whereas he told Shane DuBow that he in fact sold illegal drugs. DuBow's interview notes describe in some detail Anderson's drug-dealing activity.

(2) Anderson testified at trial that he received a gun used in the second robbery from an individual on the street, but he said before the grand jury that he received it from a friend named "Pookie."

(3) Anderson testified at trial that he contacted Jennings to initiate the plan to rob the first bank. In contrast, Anderson told the grand jury that Jennings contacted him, and he agreed to go with Jennings.

(4) In describing the first robbery at trial, Anderson testified that before Defendants entered the bank, Jennings, Anderson and a third defendant named Joe Smith obtained sunglasses at a dollar store. Before the grand jury, Anderson testified that Jennings sent him and Smith to purchase the sunglasses.

(5) Anderson provided inconsistent descriptions regarding the location of a third defendant immediately following the fourth robbery.

Based upon this evidence, Jennings and Elem moved the district court for a new trial. In support of their motion, Jennings and Elem argued that they could have used Anderson's grand jury testimony and DuBow's interview notes to impeach Anderson at trial. Elem also argued that the identification of Anderson's attorney as a former prosecutor improperly bolstered Anderson's credibility as awitness.

The district court reviewed all of the relevant material and denied Defendants' motion. The district court held that the inconsistencies between Anderson's trial testimony and his grand jury testimony were not material for two reasons. First, Defendants cross-examined Anderson onmatters far more damaging to his credibility; and second, the evidence corroborating Anderson's identification of the Defendants as his accomplices was overwhelming. This appeal followed.

II.  Discussion

A.  Anderson's Grand Jury Testimony

Jennings and Elem argue that the government's failure to deliver Anderson's grand jury testimony constituted a violation of both Brady v. Maryland and the Jencks Act. Defendants claim that had they received Anderson's grand jury testimony, their cross-examination would have been more effective and would have altered the outcome of the trial.

We review for abuse of discretion the denial of a motion for new trial based upon newly discovered evidence claimed to violate Brady. See United States v. Asher, 178 F.3d 486, 496 (7th Cir. 1999); United States v. Silva, 71 F.3d 667, 670 (7th Cir. 1995).


1.  Brady v. Maryland

Under Brady v. Maryland, 373 U.S. 83, 87 (1963), the government has an obligation to disclose favorable evidence that is

material to the case. The prosecution's duty to disclose evidence encompasses both exculpatory and impeachment evidence. See United States v. Bagley, 473 U.S. 667, 676 (1985). However, a Brady violation occurs only if the government withholds evidence that, had it been disclosed, creates a reasonable probability that the result of the trial would have been different. Strickler v. Green, 527 U.S. 263, 289-90 (1999); United States v. Stott, 245 F.3d 890, 901 (7th Cir. 2001). The later inquiry is subjective; "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 435 (1995); see also Strickler, 527 U.S. at 289-90.

In this case, the inconsistencies between Anderson's grand jury testimony and his trial testimony do not undermine the legitimacy of the jury's verdict for several reasons. First, the main purpose of Anderson's testimony at trial was to identify Jennings and Elem as his accomplices. While Anderson may have mistaken minor details, nothing in Anderson's grand jury testimony weakens his identification of Jennings and Elem. Second, the inconsistencies between Anderson's grand jury testimony and his trial testimony would not have the effect that they must to state a viable Brady claim--that is, damaging Anderson's credibility to such an extent that the jury would discredit his identification of Jennings and Elem. The government never concealed Anderson's credibility, but rather directly impeached him by identifying prior felony convictions, prior bad acts, prior inconsistent statements, and bias and prejudice for his deal with the government./3 Why the jury would disbelieve Anderson after hearing that he gave inconsistent accounts regarding which defendant actually purchased sunglasses prior to one of the robberies is beyond comprehension.

Faced with such trivial discrepancies, the district court held that the government's failure to turn over Anderson's grand jury testimony did not result in prejudice because it could have

no conceivable effect on the outcome of the proceeding. Cf. United States v. Nash, 29 F.3d 1195, 1202 (7th Cir. 1994) (rejecting Brady claim where impeachment evidence "cannot be characterized as anything but minor" under the facts); United States v. Montgomery, Nos. 96-1303, 97-1313, 1997 U.S. App. LEXIS 27227 (7th Cir. October 1, 1997) (unpublished) (while officer's notes revealed inconsistencies with trial testimony, minor nature of discrepancies would not have discredited officer's testimony). Thedistrict court's holding does not constitute an abuse of discretion.

### 2. Jencks Act

The Jencks Act provides that "witness statements in the possession of the United States which relate to the subject matter as to which the witness testifies shall be turned over to the defendant for examination and use." United States v. Radix Laboratories, Inc., 963 F.2d 1034, 1039 (7th Cir. 1992). Although Anderson's grand jury testimony is properly classified as Jencks Act material, see 18 U.S.C. sec. 3500 (e)(3) (including statements "made by said witness to a grand jury"), Defendants' arguments must fail for the same reasons described in our disposition of their Brady claim. "Although the text of the Act does not itself require a demonstration of prejudice, courts have held that relief may not be granted under the Jencks Act without such a showing." United States v. Johnson, 200 F.3d 529, 535 (7th Cir. 2000) (collecting cases). Because neither Jennings nor Elem suffered any prejudice, the government's failure to produce the grand jury testimony does not warrant a new trial. See id., citing United States v. Wables, 731 F.2d 440, 448 (7th Cir. 1984).

## B. DuBow's Interview Notes

Jennings and Elem next contend that their "ignorance" of DuBow's interviews with Anderson, conducted before and during Anderson's preparation as a witness, impeded their ability to effectively cross-examine Anderson. This, Defendants reason, resulted in a violation of the Sixth Amendment's Confrontation Clause, particularly in light of the government's failure to turn

over Anderson's grand jury testimony.

The Sixth Amendment guarantees each defendant the right to "be confronted with the witnesses against him." U.S. Const., amend. VI. The Supreme Court has said that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986). Confrontation Clause violations most often arise when the district court limits cross-examination to areas that impede the defendant's ability to question the witness. See United States v. Jackson, 51 F.3d 646, 651 (7th Cir. 1995); United States v. Nelson, 39 F.3d 705, 708 (7th Cir. 1994). The concern in such cases is that a defendant have sufficient leeway to establish "a reasonably complete picture of the witness," particularly when the witness's credibility is at stake. United States v. Saunders, 166 F.3d 907, 919 (7th Cir. 1999), citing United States v. Laboy-Delgado, 84 F.3d 22, 28 (1st Cir. 1996).

In this case, nothing that occurred during Defendants' trial remotely approaches a Confrontation Clause violation. The government is not required to relinquish material it does not possess, of which it was not aware, or over which it had no control. What Defendants have failed to do (and what they cannot do) is identify any action, either by the prosecution or the trial court, that prevented them from obtaining DuBow's interview notes and using those notes during Anderson's cross-examination. Because the disputed material was equally available to both parties, Defendants' inability to obtain DuBow's interview notes does not warrant a new trial.

C.  Questions Regarding Anderson's Attorney

Finally, Jennings and Elem maintain that the government intentionally bolstered Anderson's credibility at trial by asking several questions regarding whether a former federal prosecutor represented Anderson. According to Jennings and Elem, this bolstering rose to a level that war

rants a new trial.

It is true that the government may not "vouch" for the credibility of government witnesses. United States v. Cornett, 232 F.3d 570, 575 (7th Cir. 2000). To assess the impact of a prosecutor's remarks on the trial, this circuit engages in a two-step process. First, we consider the statements in isolation. United States v. Renteria, 106 F.3d 765, 766 (7th Cir. 1997). If the remarks seem improper, we then evaluate them "in the context of the entire record and ask whether they denied the defendant a fair trial." Cornett, 232 F.3d at 575; Renteria, 106 F.3d at 767. In Renteria, this court acknowledged that improper vouching generally falls into two categories. The first occurs when a prosecutor expresses her belief in the credibility of a particular witness; the second when a prosecutor implies facts not before the jury that lend a witness credibility. Id. at 766.

In this case, the first is absent because the prosecutor said nothing that directly bolstered Anderson's credibility. Nor did the government imply facts tending to lend Anderson credibility. While the question regarding Anderson's counsel was perhaps improper, it fails to rise to the level of reversible error. In each of the cases where this court has found improper vouching, a direct and cognizable linkexisted between prosecutorial comments and the witness's credibility. See, e.g., Cornett, 232 F.3d at 575-76 (vouching occurred where prosecutor commented on occupational integrity of police officers); United States v. Johnson-Dix, 54 F.3d 1295, 1304-05 (7th Cir. 1995) (improper to state that police officer had no reason to risk career by lying). See also United States v. Berry, 627 F.2d 193, 198 (9th Cir. 1980) (prosecutor's argument that government had kept itswitnesses separated to ensure the truthfulness of their testimony was improper). In contrast, the questions in this case do not necessarily lead to the inference that Anderson is credible.

Furthermore, even if the prosecution intended the jury to draw an inference regarding Anderson's credibility, we find that the risk to Defendants' "substantial rights" was slight, and any error that occurred was harmless. Cornett, 232 F.3d

at 576; United States v. Keskey, 863 F.2d 474, 480 (7th Cir. 1988). As noted above, both the prosecution and defense counsel did an adequate job of impeaching Anderson's credibility. The fact that a former federal prosecutor represented Anderson surely did not tip the scales in favor of credibility. As a result, the district court's decision to deny Defendants' motion for a new trial was not an abuse of discretion.

## III. Conclusion

Jennings and Elem failed to establish that the government's misconduct caused them any prejudice at trial. Nor have they demonstrated that any government action deprived them of the right to cross-examine the prosecution's witnesses. Accordingly, the decision of the district court is AFFIRMED.

FOOTNOTES

/1 Throughout the proceedings below, Elem was alternately referred to as "Johnelle" and "Johnell." The proper spelling, based upon all relevant briefs and the government's indictment, is "Johnelle."

/2 The indictment charged additional defendants not relevant to this appeal.

/3 Defense counsel's cross-examination was equally damaging to Anderson's credibility. Anderson admitted lying to government investigators about his name, the number of people who were involved in the series of bank robberies, his brother's alleged lack of involvement in the robberies, the kind of weapon used in the second robbery, and the fate of a vehicle used in the second robbery.