**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2007
Decided August 31, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-3652

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:04CR00155-003 |
| ANTONIO RODRIGUEZ, *Defendant-Appellant*. | David F. Hamilton, *Judge*. |

**ORDER**

After a jury trial Antonio Rodriguez was found guilty on two counts of possessing methamphetamine with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Because of the drug quantity and Rodriguez's prior conviction for a felony drug offense, he received the statutory mandatory minimum sentence of 240 months' imprisonment. *See id.* § 841(b)(1)(A)(viii). Rodriguez argues on appeal that the district court should have declared a mistrial after a police officer described an out-of-court identification of Rodriguez by an informant and volunteered that prior to trial the officer had assumed that Rodriguez would plead guilty. In light of the extensive evidence of Rodriguez's guilt, these two statements—which were stricken and which the jury was instructed to ignore—did not deprive him of a fair trial. Therefore, we affirm his convictions.

At Rodriguez's two-day trial in July 2006, three police officers described how undercover officer Matt Hall, assisted by an informant, conducted two controlled buys of methamphetamine from Rodriguez in July 2003. The informant did not testify at trial, having apparently fled to Mexico.

The two statements that Rodriguez complains about were elicited during the testimony of Sergeant Steven Swarm, the government's first witness. Swarm testified on direct that in July 2003 the informant gave him the names of several drug dealers in Indianapolis. When the prosecutor asked Swarm if he tried to verify the informant's information, Swarm replied, "I recognized some of the individuals he was discussing and then, subsequently, I had photographs, and in fact showed the photographs, one being Mr. Antonio Rodriguez, and the informant identified him." Defense counsel interposed an objection, which the district court sustained. The challenged testimony was stricken, and the jury was ordered to disregard it.

The second statement occurred during redirect. On cross-examination, defense counsel had elicited that the government waited until the eve of trial to prepare transcripts in English of the audio recordings made during the two undercover buys, both of which were conducted in Spanish. The prosecutor, following up on that questioning during redirect, asked Swarm why he did not have the transcripts made sooner. The prosecutor said later that she had expected Swarm to answer that transcripts are generally not prepared until the eve of trial as a matter of course. But Swarm answered: "There were several reasons. One, to be honest, I thought the defendant would plead guilty to the charge." Defense counsel objected, and the district court responded: "Sustained. Ladies and gentlemen, that is highly improper. . . . [Y]ou'll disregard it. Police are not entitled to draw those kinds of conclusions."

The district judge then declared a recess, and defense counsel moved for a mistrial while the jury was out. The judge denied the motion and stated: "In my view, it will not be a surprise to the jurors that police think that Mr. Rodriguez is guilty. And I think the cautionary instruction, the fervor of which may not be reflected in the transcript, ought to be sufficient in this case."

The trial continued. Officer Hall testified that at around 5:00 p.m. on July 9, 2003, he and the informant drove to a residence at 414 South Gray Street in Indianapolis. Although it is not clear from the record whether Rodriguez lived there, Sergeant Swarm testified that a van was registered to Rodriguez at that address, and he had seen Rodriguez leave the house on at least one occasion. When Hall arrived at the house on South Gray, the informant introduced him to a man whom Hall recognized as Rodriguez, having earlier seen his driver's license photograph. Hall, who speaks Spanish, testified that Rodriguez agreed to sell him

two ounces of methamphetamine and said that it would take him two hours to procure the drugs.

Later that night the informant placed two telephone calls to Rodriguez to arrange the handoff, both of which were taped. At trial Hall identified Rodriguez's voice on the tapes. At around 8:00 p.m., Hall and the informant met Rodriguez in the parking lot of a grocery store a block away from the South Gray residence. Rodriguez showed up on foot, climbed into Hall's truck, and handed him a package in exchange for $800. Testing later revealed that the package contained 64 grams of a substance containing methamphetamine. Hall asked if Rodriguez would sell him a pound of methamphetamine and whether he could contact Rodriguez directly, without going through the informant; Rodriguez agreed. After the exchange Hall drove to South Gray and dropped Rodriguez a quarter of a block from the house where they had met earlier.

Officer Hall testified that during the July 9 buy Rodriguez was sporting a goatee and wearing a gray baseball cap, a dark shirt, and jeans. Sergeant Swarm, who watched the transaction from a distance, testified that he also recognized Rodriguez from his driver's license photograph and described him as having facial hair and wearing a gray baseball cap and a dark shirt. At trial both officers identified Rodriguez as the seller. Both officers remarked that at trial Rodriguez was missing the goatee he formerly had. Hall noticed that he was wearing his hair slightly shorter and Swarm observed that he was "a little bit grayer."

On July 10, 2003, Officer Hall called Rodriguez to discuss his intended purchase of one pound of methamphetamine, but Rodriguez pretended to be someone else and said that Rodriguez was in California. After the informant called Rodriguez and reassured him that it was safe to deal with Hall, Hall was able to arrange a second buy with Rodriguez over the phone. At approximately 6:00 or 6:30 p.m. on July 18, 2003, Hall drove to the parking lot of a restaurant, again within a couple of blocks of 414 South Gray. Rodriguez again arrived on foot, climbed into Hall's truck, and placed a package under the passenger's seat. Hall gave Rodriguez $4,500. Testing later revealed that the package contained a little over a pound of a substance containing methamphetamine, with approximately 71 grams of pure methamphetamine. After completing the transaction—which took three to four minutes—Hall drove Rodriguez to a location a couple of blocks away from the restaurant. Sergeant Swarm and Sergeant James Wilkinson both participated in surveillance during the July 18 buy, and at trial both identified Rodriguez as the seller.

The defense did not present any evidence at trial. The final instructions to the jurors reminded them "not to pay attention to any testimony that was stricken, or any statements of counsel made to the court concerning those matters."

We review the district court's denial of Rodriguez's motion for a mistrial for an abuse of discretion, *United States v. Glover*, 479 F.3d 511, 520 (7th Cir. 2007), and will affirm absent "a strong conviction that the district court erred," *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2006) (quotation marks and citation omitted). Because the trial judge "is in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial," our review is highly deferential. *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000); *see also United States v. Cheska*, 202 F.3d 947, 950 (7th Cir. 2000).

The government concedes that Sergeant Swarm's statements were improper. The question we must answer, though, is whether the comments were so prejudicial as to make a new trial the only permissible remedy. Here, the adequacy of the court's curative instructions and the weight of the evidence against Rodriguez dispel any concern that he was deprived of a fair trial by Swarm's comments. The district court gave curative instructions immediately after the comments were made and further instructed the jury at the close of evidence to disregard "any testimony that was stricken, or any statements of counsel made to the court concerning those matters." We presume that jurors follow the trial judge's instructions, *see, e.g.*, *United States v. Dumeisi*, 424 F.3d 566, 579 (7th Cir. 2005), and there is no reason to suppose that they failed to do so here, where overwhelming evidence supports Rodriguez's convictions. *See Clarke*, 227 F.3d at 883-84. Rodriguez's contention that the jury "presumably struggl[ed] with the identification issue," and that Swarm's statements were therefore especially damaging, is untenable: three police officers unequivocally identified him at trial as the person who twice sold methamphetamine to Officer Hall. Because the curative instructions were sufficient and overwhelming evidence supports Rodriguez's guilt, the district court did not abuse its discretion in denying the motion for mistrial. *See id.* at 883-84.

Accordingly, we AFFIRM Rodriguez's convictions.